Turner, J.
 

 Our question: Whether, by the device of a revocable living trust, a husband relinquishes such dominion over the personal property in such, trust as will bar his widow’s right to a distributive share of
 
 *207
 
 such personal property upon her election to take under the statute of descent and distribution.
 

 It is the claim of appellant, Clara C. Bolles, that her husband and The Toledo Trust Company, by means of two trust agreements (Nos. 331 and 520), attempted to deprive her of her statutory rights as widow to elect to take one-third of the property involved in those trusts. It is the claim of the widow that her husband maintained full dominion and control during his lifetime of the property in those trusts “to all practical intents and purposes as though he had not transferred any of it to-the so-called trustee.”
 

 In addition to those on behalf of the widow, briefs have been filed on behalf of cross-appellants, a daughter and two adopted children. However, the conclusion at which we arrive in respect of the widow’s-rights will make unnecessary any extended discussion of the claims of the children.
 

 Among the subsidiary questions which are presented by the record may be listed the following:
 

 1. Was it the intention of testator to incorporate in his will by reference-the terms and provisions of trust No. 331?
 

 2. Is item III of the will to be construed as recognizing the trust company and trust No. 331 as facts of independent significance rather than an incorporation by reference?
 

 3. If there was a valid incorporation of the terms and provisions of trust No. 331 by reference thereto in the will, need we go further and determine the validity of the trust as such?
 

 4. If there was no incorporation by reference, do, the provisions of item III create a trust in addition to trust No. 331?
 

 5. Are trusts Nos. 331 and 520, or either of them, illusory?
 

 6. Are trusts Nos. 331 and 520, or either of them,
 
 *208
 
 void as constituting a mere agency ratlier than a trust? If so, what effect has the death of the settlor?
 

 7. Are trusts -Nos. 331 and 520, or either of them, void as testamentary dispositions ?
 

 8. May testator by substitute provision' deprive his .widow of the year’s allowance set off by the appraisers of the.estate?
 

 The questions argued by counsel in connection with this record offer an alluring invitation to wander through the myriad of sometimes conflicting and sometimes confusing theories and decisions which often are due to the presence or absence of statutory provisions or the failure in the particular jurisdiction to recognize some claimed principle of the nonstatutory law obtaining elsewhere. We shall forego a review of the many authorities cited by opposing counsél about the effect of which they are in sharp disagreement.
 

 We are of the opinion that the decisive question here is governed by the statutory law of this state. For convenience we will start with Section 8617, General Code, which provides:
 

 “All deeds of gifts and conveyance of real or personal property made in trust for the exclusive use of the person or persons, making the same shall be void and of no effect, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend or revoke such trust, and such trust shall be valid as to all persons, except that any beneficial interest reserved to such creator shall be subject to be reached by the creditors of such creator, and. except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court of equity, at the suit of any creditor or creditors of the creator, may compel the exercise of such power of revocation so reserved, to the s-ame'ex
 
 *209
 
 tent and under the same conditions that such creator could have exercised the same.”
 

 There is, therefore, in this state authority for amendable and revocable living trusts, valid as to all persons except creditors. But the question remains as to what interest or dominion, if any, the husband held at the time of his death.
 

 Section 10504-4, General Code, provides:
 

 “A document, book, record or memorandum in actual existence may, by reference, be incorporated in a will, if referred to as being actually in existence at the time the will is executed. Such document, book, record or memorandum shall be deposited in the Probate Court when the will is probated, or within thirty days thereafter unless for good cause shown, the court grants an extension of time. In place of such original document, book, record or memorandum there may be substituted a copy certified to be correct by a person authorized to take acknowledgments on deeds.”
 

 As a trust agreement (including a deed, indenture or other written settlement) comes within the definition “document, * * * record or memorandum” it may be incorporated in a will providing it was in existence at the time the will was executed. It remains to be seen what effect, if any, the incorporation in a will has upon an amendable and revocable trust, or vice versa.
 

 Section 10504-47, General Code, provides:
 

 . “A will shall be revoked by the testator tearing, canceling, obliterating or destroying it with the intention of revoking it, by the testator himself, or by some person in his presence, or by his express written direction, or by some other will or codicil, in writing, executed as'' prescribed by this title, or by some other writing, signed, attested and subscribed, in the manner provided by this title for the making of a will, but nothing herein contained shall prevent the revocation implied •
 
 *210
 
 by law, from subsequent changes in the condition or circumstances of the testator.”
 

 Patently, an amendment to or revocation of the terms of a trust after it had been incorporated in the will would,- if given effect, be repugnant to the foregoing statute unless executed as required by our statutes pertaining to wills.
 

 Again there comes an invitation to wander and to determine (a) whether any of the foregoing statutory enactments is
 
 in pari materia
 
 with another or all, or (b) whether a conflict exists which may or may not be reconciled. But we do not deem this necessary.
 

 As there was no amendment to or revocation of the terms of trust No. 331 we need not speculate on what would happen if there had been, further than to say that there is precedent for holding that the subsequent amendment of such incorporated trust may not effect a change in the will as executed although the amendment might be carried out through the use of property which was in the trust independent of that received under the will. (See
 
 Old Colony Trust Co., Trustee,
 
 v.
 
 Cleveland,
 
 291 Mass., 380, 196 N. E., 920.)
 

 inasmuch as our statutory law authorizes the making of an amendable, revocable trust and the incorporation of the terms of such trust into a will, we are of the opinion that the mere possibility of an amendment of the trust does not make the will or trust void when the trust is incorporated in the will by reference. Such trust is to be enforced according to its terms existing at the time of the incorporation.
 

 The difficulty here arises out of the substance rather than the form of trust No. 331. It arises also out of the contemporaneous execution of trust No. 331 and the will. Counsel for the trustee emphasize this contemporaneous action as showing testator’s intent to augment trust No. 331 by testamentary disposition. While we accept this
 
 pro
 
 tanto, it does not dispose of
 
 *211
 
 the question whether such contemporaneous action and later creation of trust No. 520 did not in the eyes of the law constitute a device whereby it was attempted to deprive the wife of her distributive share of property of which the husband had the enjoyment and substantial dominion until his death. Trust No. 520 constituted a part of the plan of the testator. In article II of the trust indenture covering trust No. 520 it is provided:
 

 £<(b) After donor’s death, and the payment of all indebtedness then secured by the trust property, the securities and property which donor by written instructions during his lifetime has so requested, shall be distributed in kind and delivered to the trust created by and between donor and The Toledo Trust Company on January 26th, 1928, and known as trust No. 331 in the records of The Toledo Trust Company, to be thereafter treated as a part of that trust. -
 

 ££A11 the rest, residue and remainder of the trust property shall be liquidated as soon as is reasonably possible after donor’s death, and the entire net proceeds of this trust shall then be transferred to the trust created.by and between the donor and The Toledo Trust Company on January 26th, 1928, and known a's trust No. 331 in the records of The Toledo Trust Company, to be thereafter, treated as a part of that trust.’:’ Assets in trust No. 520 were substantial.
 

 Consideration must also be given to the fact that it is provided in the trust indenture for trust No. 331: ■
 

 ££ (b) Upon the death of the donor the trustee shall pay to donor’s wife, Clara C. Bolles, the sum of five hundred (.$500) dollars per month from the net income of the trust property, during her lifetime.
 

 ££(c-) The trustee shall retain herein sufficient trust property to produce a net income sufficient to insure the payments provided for in paragraph (b), the trustee to hold such property as it may deem proper.
 
 All
 
 
 *212
 

 property in addition to the amount so set aside'to maintain the income payments to donor’s ivife shall be transferred and delivered to the trust created between the donor and The Toledo Trust Company on January 8th, 1928, and known as trust No. 328 in the records of The Toledo Trust Company, and shall thenceforth be treated as a part of that trust. In the event donor’s wife does not elect to take under the provisions of don- or’s will, then all payments to her hereunder shall be cancelled and this trust terminated as soon as possible.
 

 “(d)
 
 Upon the death of donor’s said wife, the entire trust property shall be transferred, to the trust created between the donor and The Toledo Trust Company on January 8th, 1928, and knotvn as trust No. 328 in the records of The Toledo Trust Company, and shall thenceforth be treated as a part of that trust.”
 
 (Italics ours.)
 

 We recognize the right of the husband to dispose of his personal property during his lifetime without the consent of his wife (Section 7998, General Code), but we do not recognize the right of the husband to bar his wife of her right to a distributive share in the property which the husband possessed'at the. time of his death (Section 10504-55, General Code, 114 Ohio Laws, 356). It is not necessary to hold that the terms and administration of' either trust No. 331 or trust No. 520 created a mere agency to come to the conclusion that Mr. Bolles during his lifetime had substantial enjoyment and dominion over the small amount of property in trust No. 331 and of the substantial amount of property in trust No. 520. Mr. Bolles made himself the beneficiary during his lifetime of "these amendable and revocable trusts. Until the death of Mr. Bolles trust No. 331 remained, as apparently it was his intention for it to so remain during his lifetime, wholly inadequate for the purpose for which it was established. Therefore, we áre led to the conclusion that as to the widow, trusts
 
 *213
 
 Nos. 331 and 520 were illusory. The term illusory is defined by Webster as “deceiving, or tending to deceive; fallacious, illusive.” This criticism does not necessarily affect the validity of either of these trusts under Section 8617, G-eneral Code, but it is intended to show that such trusts may not be used as a device to deprive the widow of her distributive share of the property possessed by her husband at the time of his death. To the extent that such an arrangement, if allowed to stand, would deprive the widow of her distributive share of property, it is voidable at the instance of the widow.
 

 In the case of
 
 Doyle
 
 v.
 
 Doyle, Jr.,
 
 50 Ohio St., 330, 34 N. E., 166, this court held:
 

 “A widow is-not deprived of a distributive share of the personal estate of her deceased husband, by his leaving a will in which he disposed of all of it to others, without making any provision for her. As to her in such case, he is regarded as dying intestate.”
 

 In referring to the statutory law upon the subject, Judge Minshall said, at page 340: “A careful consideration of the language of these sections shows, as we think, a clear recognition of the right of a widow to a portion of the personalty of her deceased husband on distribution, that is beyond his power to affect by any will he may make, unless she assent to it. And this is in accordance, not only with the general understanding on the subject, but, also, with the liberal policy that has always prevailed in our law toward the widow. ’ ’
 

 We do not think that recent legislation has changed that policy.
 

 ' We reiterate that where there is an absolute,
 
 bona fide
 
 transfer by a husband of his personal property during lifetime the wife at his death may not assert her right to a distributive share of such personal property. However, where there is not an absolute transfer of his property during the husband’s lifetime, the
 
 *214
 
 widow may assert her right to a distributive share. (A conflict will be found,
 
 cf.
 
 41 Corpus Juris Secundum, 417, Section 20; 26 American Jurisprudence, 816, Section 198
 
 et seq.;
 
 1 Scott on Trusts, 350, Section 57.5
 
 et seq.;
 
 1 Restatement of Trusts, 174, Section 57.)
 

 In 21 Ohio Jurisprudence, 429, Section 121, it is said:
 

 “Where the husband retains control during his lifetime, and the transfer is a'mere device to deprive his wife of her distributive share in his personalty, it is ineffective as against the wife, and she may have it set' aside.” -
 

 A leading case on this subject is
 
 Newman
 
 v.
 
 Dore et al.,
 
 Trustees, 275 N. Y., 371, 9 N. E. (2d), 966, 112 A. L. R., 643, wherein it was held that a transfer by a husband of all of his property in trust is ineffective to deprive his widow of any rights in and to his property upon his death, where the fact that the husband reserved to himself the enjoyment of the entire income so long as he should live and power to revoke the trust and to control the trustee in its administration shows the transfer to have been illusory. See, also, annotations, 112 A. L. R., 649 and 64 A. L. R., 466, 487.
 

 While it'is to be pointed out that the
 
 Newman
 
 v.
 
 Dore ease
 
 arose under the statutory law of New York and further that the court quaered whether the situation would have been the same without a reservation of the power of control, yet we think on the whole the case is illustrative of the fact that where a widow is given certain rights by statute she may not be deprived thereof by her husband. As stated by Judge Davis in
 
 Hutchings
 
 v.
 
 Davis, Exr.,
 
 68 Ohio St., 160, 171, 67 N. E., 251: “The courts cannot, by means of any real or imagined equities, limit, qualify or annul rights granted by legislative enactment. * *
 
 *
 
 [page 173] It is of no consequence that he [the husband] may not have intended that his wife should have anything out of his estate. He could not defeat her legal rights.”
 

 
 *215
 
 The following note is to be found in 112 A. L. R., 649:
 

 “In the applicable cases decided since the original annotation was published the rule therein stated [64 A. L. R., 466] appears to have been adhered to, that a gift
 
 inter vivos
 
 by a husband of his property, if absolute and
 
 bona fide,
 
 and not made with a fraudulent intent', is not a fraud on the right of the wife to share in her husband’s property at his death; but that if the gift is merely colorable, — that is, if the transfer is apparently a gift, but in reality a mere device by which the husband is enabled to use and enjoy his property during his lifetime, and at the same time deprive his wife of her property rights at his death, — or if the gift is made with a fraudulent intent, then it is a fraud on the wife’s rights and is consequently void.”
 

 We may go a step further and say that irrespective of the husband’s intention, if the effect of the device resorted to is such as to cut down or deprive the widow of the right given her under Section 10504-55, General Code, such device is voidable when challenged by the widow.
 

 We are of the opinion that a wife’s right to elect to"', take under the law places her in a higher position than a mere creditor in respect of the personal property in * an unrevoked revocable trust. Therefore, the case of
 
 Schofield, Trustee,
 
 v.
 
 Cleveland Trust Co., post,
 
 has no application to the facts in this case.
 

 Turning now to what we have termed the subsidiary questions: The theory of ‘‘facts of independent significance” in the interpretation of wills has been adopted in some states where there is no statutory or recognized common-law provision for incorporation by reference. (See cases discussed in 1 Scott on Trusts, 293, Section 54.3.) While there may arise in Ohio a case which presents “facts of independent significance,” we do not think that the present case is
 
 *216
 
 such. When by item III of his will testator provided that the property was to be managed and disposed of in accordance with the terms and provisions of trust No. 331, we are clearly of the opinion that testator thereby incorporated by reference the terms and provisions of trust No. 331. Certainly the No. 331 trust agreement was a document, record or memorandum in actual existence at the time of the execution of the will. Certain, also, is it that any document, book, record or' memorandum in actual existence is a fact of independent significance. ' Where the General Assembly has codified the law on a subject it is the statutory provisions which are to be followed and it is ,the legislative policy which is to be observed. The purpose of the requirement of Section 10504-4, General Code, relative to the depositing in the Probate Court of the document, book, record or memorandum incorporated in the will, has been satisfied in this particular case where the incorporated document has been made available and is the basis' for the request for a declaratory judgment.
 

 Counsel on both sides have cited and discussed the case of
 
 Koeninger
 
 v.
 
 Toledo Trust Co.,
 
 49 Ohio App., 490, 197 N. E., 419 (decided by the Court of Appeals for Lucas county), which involved also a Toledo Trust Company trust agreement, with facts analogous to the instant case and in which it was. conceded that there was an incorporation by reference of an amendable and revocable trust. There the court held that a provision in the supplementary trust agreement made after the execution of the will directing the transfer of ten acres of land to donor’s nephew, which land Had passed to the trustee by devise .in the will, was ineffective and void, but that a provision in such supplementary trust agreement directing the payment of $500 to another nephew was- valid; and that such sum of $500 could be paid only out of the property trans
 
 *217
 
 ferred to the trustee by testator during his lifetime. The substance of the court’s holding in this respect was that testator could not alter his will by a supplementary agreement which did not comply with the statute of wills. Notwithstanding the amendable feature of the trust agreement and the actual amendment thereof, the court sustained both the will and the trust. That case has been reviewed in various texts and law quarterlies,
 
 e. g.,
 
 2 Ohio State Law Journal, 72; 21 Cornell Law Quarterly, 492; 49 Harvard Law Review, 498; 9 Cincinnati Law Review, 279; 1 Scott on Trusts, 298
 
 et seq.
 

 It is our opinion that the testator in the instant case did incorporate by reference the terms and provisions of trust No. 331. We are of the further opinion that trust No. 331 could be made the devisee of additional property and that item III of the will did not create a trust separate and apart from trust No. 331, but did augment the assets in trust No. 331. See
 
 Swetland
 
 v.
 
 Swetland,
 
 102 N. J. Eq., 294, 140 A., 279.
 

 1 Scott on Trusts, 293, Section 54.3, says: “Even where the instrument of conveyance did not expressly authorize the trustee to receive additional property, it is believed that it would not be improper to administer the whole of the property as a single trust.”
 

 We are of the further opinion that the widow has the right to treat this testamentary disposition and trust No. 331 as voidable to the extent that if she elects not to take under the will she will be entitled to her distributive share of the property passing under item III of the will together-with her distributive share of the
 
 res
 
 of trust No. 331 as augmented by the
 
 res
 
 of trust No. 520.
 

 In this connection it should be pointed out as to the securities which were in a safety deposit box in the Ohio Trust Company and which were the subject of the cases decided by this court in 132 Ohio St., 21, and
 
 *218
 
 136 Ohio St., 517, that neither of such eases estops Mrs. Bolles from claiming her distributive share of such property in the event that she elects not to take under the will. In the first case Mrs. Bolles claimed the property in such safety deposit box under a gift
 
 inter vivos
 
 from her husband. Having lost the first case, Mrs. Bolles then claimed as
 
 cestui gue
 
 trust under a resulting trust. This second case was decided against her on the ground that the first case was
 
 res judicata
 
 of her title, legal and equitable, to the personal property in such safety deposit box at the time of her husband’s death. In the instant case Mrs. Bolles claims under á right given her by statute and which was not in question in either of the foregoing cases. Here she is asserting a statutory right created under Section 10504-55, General Code.
 
 Norwood
 
 v.
 
 McDonald et al., Admrs.,
 
 142 Ohio St., 299, 52 N. E. (2d), 67. (Nothing said in the dissenting opinion in that case is in conflict with what is said here.)
 

 Some confusion has crept into our law of trusts from two sources: (1) The failure to distinguish between (a) trusts created and administered prior to, and (b) trusts created after the amendment of Section 8617, General Code (109 Ohio Laws, 215), which became effective August 14, 1921; (2) the conflict in the interpretation of the nonstatutory law prior to the 1921 amendment of Section 8617, General Code, between the
 
 Redkey
 
 and
 
 Hawkins cases, infra,
 
 on one hand and the
 
 White
 
 and
 
 Watts cases, infra,
 
 on the other hand. Therefore, 'it may not be amiss to trace briefly our previous decisions.
 

 Section 1 of an act for the prevention of frauds and perjuries, 29 Ohio Laws, 218, provided:
 

 “That all deeds of gifts and conveyances of goods and chattels, made in trust to the use of a person or persons making the same, shall be, and hereby are declared to be void and of no effect.”
 

 
 *219
 
 Thus the statutory law stood at the time (1912) of the decision in the case of
 
 Worthington, Admr.,
 
 v.
 
 Redkey, Exr.,
 
 86 Ohio St., 128, 99 N. E., 211. In that case the court said, at page 134:
 

 “Whether a gift is
 
 inter vivos,
 
 or
 
 causa mortis,
 
 or made through the medium of a trust, it is none the less a gift and subject to the conditions which the law places upon gifts; and whether the gift is made to a third person as agent for the donor or as trustee for the donee, there must be such a distinct and absolute delivery of the property as to show a relinquishment of all dominion over the property by the donor. ’ ’
 

 As the trust settlement in the
 
 Redkey case
 
 was made subject revocation by the donor, the court concluded that neither possession of the money nor the title to it passed to the donees or to a trustee for them, saying at page 139:
 

 “Our conclusion is that neither the possession of the money, nor the title to it, passed to the donees, nor to a trustee for them, * * * that if Redkey was acting as the agent of the donor, such agency was revoked by his principal’s deáth.”
 

 The above quoted Section 1 of 29 Ohio Laws, 218, became Section 8617 of the General Code and remained in the same form until the amendment in 109 Ohio Laws, 215, effective August 14, 1921. This amendment gave legislative recognition to an amendable and revocable living trust for the first time in Ohio.
 

 In 1929 this court decided the case of
 
 Union Trust Co.
 
 v.
 
 Hawkins, Admr.,
 
 121 Ohio St., 159, 167 N. E., 389, 73 A. L. R., 190. In that case it was held:
 

 “3. The amendment of Section 8617, General Code, effective August 14,1921, authorizes a trust agreement, including the power to alter, amend or revoke the trust, and by virtue of that amendment a trust agreement making a transfer or conveyance of property including such power and to take effect at the death of
 
 *220
 
 the creator of the trust, will effect such transfer and conveyance, although the instrument be not executed in conformity with the law of wills.”
 

 In the
 
 Hawkins case,
 
 Chief Justice Marshall reviewed the authorities and made these observations (page 171):
 

 ‘1
 
 On principle and without resorting to technicalities and refinements of reasoning, it is difficult to see how a valid gift can be made through the medium of a trustee, when the gift must necessarily fail if made to the donee direct. * * * Except for the fact that certain very respectable authorities give sanction to a gift through the medium of a trustee, where power of revocation is involved, we would have no hesitation in refusing to give it our sanction or to even dignify it by discussion. * # *
 

 “[Page 178] “Having reached the conclusion that the trust agreement [settlor] in the instant case retained such control and dominion of the property and reserved such rights to alter and revoke as to render it invalid at common law to effect a gift either
 
 inter vivos
 
 or
 
 causa mortis
 
 in favor of the beneficiaries named, it remains to determine the effect of Code Section 8617 thereon. # * *
 

 “ [Page 181] After all, it is a matter which is within the power of the General Assembly, and, if it becomes unsatisfactory in operation, the Legislature can surround it with appropriate safeguards. It is in the power of the Legislature to amend or even repeal the statute of wills. It may provide for the private settlement of estates and without probate or other public administration. ’ ’
 

 All members of the court concurred in the paragraph of the syllabus above quoted.
 

 The case of
 
 Cleveland Trust Co., Trustee,
 
 v.
 
 White,
 
 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475, was decided in 1938, but involved a trust created prior to
 
 *221
 
 the amendment of Section 8617, General Code.. The syllabus reads as follows:
 

 “1. A valid trust
 
 inter vivos
 
 is created when, under a trust agreement, the settlor transfers and delivers property to a trustee with the intention of passing title, and designated beneficiaries take immediate vested interests in such property.
 

 “2.
 
 A voluntary trust
 
 in praesenti,
 
 otherwise valid, is not rendered nugatory because the settlor reserves to himself the .following rights and powers: (1) The •use of the property and the income therefrom for 'life, (2) the supervision and direction of investments • and reinvestments, (3) the amendment or modification of the trust agreements, (4) the revocation of the trust in whole'or in part and (5) consumption of principal, when the exercise of such reserved rights and powers as to amendment and modification, revocation and consumption of principal is made dependent' upon the acquiescence and approval of a trustee, other than the settlor himself.
 

 “3. The reservation by a settlor of an unrestricted right to revoke the trust does not invalidate such trust, regardless of Section 8617, General Code, in its- present form.
 

 “4.; No valid trust is established when the settlor reserves powers which in their cumulative effect amount to ownership of the trust estate with such control over the administrative functions of the trustee as to make of him simply the settlor’s agent or representative. ’ ’
 

 The foregoing case involved a trust entered into in 1913. We need, not stop to inquire whether Section 8617, General Code, which was in its present form at the time of the decision of the case, should have been applied for the reason that paragraph three of the syllabus specifically by-passed that section.
 

 The
 
 Redhey case
 
 was disposed of in the
 
 White case
 
 
 *222
 
 with the statement (page 10): “ * * * but the case can hardly be relied upon as authority for the proposition that the retention of a power of revocation is incompatible with the creation of an effective trust.”
 

 The case of
 
 Schofield, Trustee,
 
 v.
 
 Cleveland Trust Co.,
 
 135 Ohio St., 328, 21 N. E. (2d), 119, was decided in 1939. The only paragraph- of the syllabus of that case which is of interest here is paragraph three which reads:
 

 ‘ ‘ That part of Section 8617, General Code, as amended in 1921, which provides ‘that where the-creator of such trust reserves to himself for his own benefit a power of revocation, a court of equity, at the- suit of any creditor or creditors of the creator, may compel the exercise of such power of- revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same,’ may be taken advantage of by creditors only during the lifetime of the creator of the trust.”
 

 In that case the trust was attacked as being a mere agency agreement but this was passed over and not made a subject in the syllabus. However,-in the course of the opinion Judge Zimmerman said, at page 332:
 

 “Under all the.circumstances disclosed by the record in this case, a majority of the members of the court is unwilling to hold that the Court of Appeals was wrohg in its determination that a valid trust existed within the principles announced in the case of
 
 Cleveland Trust Co.
 
 v.
 
 White, supra.’’
 

 The case of
 
 Woodside Co. of Nevada
 
 v.
 
 Narten,
 
 138 Ohio St., 469, 35 N. E. (2d), 777, was decided in 1941, and in the
 
 per curiam
 
 opinion it was said:
 

 “After a study of the facts in the instant case the members of this court find a difference of opinion among themselves as to :whether a valid trust was created, and since the ultimate judgment herein will
 
 *223
 
 not be affected thereby, this question will not be discussed further.”
 

 The foregoing quotations illustrate what anyone studying the cases must conclude that these trust cases have been decided on their particular facts and this statement is emphasized by the case of
 
 Central Trust Co.
 
 v.
 
 Watt, supra,
 
 decided in 1941, but involving a trust created long before the amendment of Section 8617, General Code. The pertinent paragraph of the syllabus reads:
 

 “1. Where, by the terms of a trust instrument, an interest passes to the beneficiary during the life of the donor, the trust is not testamentary in character merely because the donor reserves a beneficial life estate or because he reserves the power to revoke the trust in whole or in part.”
 

 The trust in the
 
 Watt case
 
 was a revocable one and under the view of the minority constituted a mere agency, being entered into long prior to the 1921 amendment of Section 8617, General Code.
 

 Three judges were of the opinion that the trust in that case was valid. The fourth judge concurring in the syllabus and in the judgment, said: “With respect to the validity of the trust there is a difference of opinion among the members of this court; but the question has not been raised by the pleadings or counsel. * * * The writer feels bound to treat the trust as valid.”
 

 The three dissenting judges took the position
 
 inter alia
 
 that the reserve powers of control and the administration of the trust (not entitled to the benefit of the provisions of Section 8617, General Code) showed the arrangement'to lie one of mere agency with the agent holding the naked title.to the property and that there was lacking the dominion in the trustee necessary to create a living trust. In the course of the dissenting opinion it is said, at page 73: “In other words, in this-
 
 *224
 
 instrument there will be found no power respecting the supervision, management or control of the property in question that is not by its express terms absolutely reserved to himself by the settlor.”
 

 It must be kept in mind that the
 
 Watt case
 
 was not in any manner affected by the 1921 amendment to Section 8617, General Code. That trust was created on June 22, 1910, and settlor died some time prior to September 21, 1914. Therefore, what was said in that case both in the majority and minority opinions must be considered in the light of Section 1 of the act in 29 Ohio Laws, 218, quoted above. There was at least no statutory authority for a revocable or amendable living trust applicable to that case.
 

 In the instant case the provisions of Section 8617, General Code, do apply and we are here dealing with trusts wherein the donor is specifically given the power to “alter, revoke or amend such trust.”
 

 We have already expressed the opinion that we have been unable to find any evidence in the record which would justify a holding in the face of the provisions of Section 8617, General Code, that trust No. 331 constituted a mere agency or was otherwise invalid, except that it was voidable by the widow to the extent of her distributive share of her husband’s property for the reason that such trust and the will constituted a device to deprive her of her statutory rights.
 

 We proceed now to trust No. 520. There is in the record the following questions and answers:
 

 “Q. Was it his habit to change the investments of that trust during his lifetime? A. He had us make a number of changes prior to his death.
 

 “Q. What was his practice; how did he have you do that? * * *
 

 . “A. He gave us instructions to sell certain stocks or purchase certain stocks, which instructions .we carried out.
 

 
 *225
 
 “Q. Did he use this trust 520 as kind of a trading account? * * *
 

 “A. You might call it that. He had a loan to the bank secured by these stocks and was changing the collateral from time to time.”
 

 However, when a transcript of the trustee’s record was introduced it showed that from the date of the trust, January 21, 1930, to the date of death, August 8, 1933, there had been six purchases and three sales. There had also been four additions, two withdrawals and one exchange of securities.
 

 Article II of trust No. 520 provides :
 

 “* # * All the rest, residue and remainder of the trust property shall be liquidated as soon as is reasonably possible after donor’s death, and the entire net proceeds of this trust shall then be transferred to the trust created by and between the donor and The Toledo Trust Company on January 26th, 1928, and known' as trust No. 331 in the records of The Toledo Trust Company, to be thereafter .treated as a part of that trust.”
 

 The question immediately arises as to whether there was or could be a vesting of interest in trust No. 331 at the time of the creation of trust No. 520. We think that there could be and was such vesting for the following reasons: Upon the contingency that the widow elected to take under the will she was a beneficiary for life under trust No. 331. But there was also a provision in trust No. 331 which reads: “All property in addition to the amount so set aside to maintain the income payments to donor’s wife shall be transferred and delivered to the trust created between the donor and The Toledo Trust Company on January 8, 1928, and known as trust No. 328 in the records of The Toledo Trust Company, and shall thenceforth be treated as a part of that trust. In the event donor’s wife does not elect to take under the provisions of donor’s
 
 *226
 
 will, then all payments to her hereunder shall be can-celled and this trust terminated as soon as possible.” We have no trouble in identifying the ultimate beneficiary under this trust.
 

 The question also arises whether at the inception of trust No. 331 an interest vested in trust No. 328. This question likewise is to be answered in the affirmative. The principal beneficiary under trust No. 328 is Mr. Bolles’ daughter, Barbara Ruth Bolles, with contingent remainder first to the daughter’s issue and in default of issue to the father, then to the mother and then to the father’s heirs at law.
 

 Prior to each purchase or sale, Mr. Bolles signed a written order. We are unable to conclude from the evidence in this case that either the trust settlement or the procedure thereunder constituted or resulted in a mere agency arrangement. On the other hand we think that the trust is valid, save as to the rights of Mrs. Bolles.
 

 As Mr. Bolles did not in his lifetime relinquish absolute dominion over the personal property remaining in this trust at the time of his death, we hold that in the event the widow elects to take under the statute of descent and distribution, she will be entitled to her distributive share of the property in those trusts at the time of her husband’s death, otherwise trusts Nos. 331 and 520 are valid trusts. The assets in trust No. 520, less the distributive share of Mrs. Bolles, in case she elects to take under the statute of descent and distribution, are to be transferred to trust No. 331. The assets in trust No. 331, including such as came to the trust under item III of the will, less the distributive share of Mrs. Bolles in case she elects to take under the statute of descent and distribution, plus the net amount of the assets received from trust No. 520, are to be transferred and administered under the terms and
 
 *227
 
 conditions of trust No. 328 for the beneficiaries therein named.
 

 Trust No. 328 has not been drawn in question by the pleadings in this case.
 

 We come now to the question of whether, if Mrs. Bolles takes under the will, she will be entitled to receive and retain the year’s allowance set off and allotted to her by the appraisers under Section 10509-74, General Code. Our answer to this question is “ no ” for the following reasons:
 

 Section 10504-61, General Code (114 Ohio Laws, 357), in effect at the time of the death of Mr. Bolles, provided:
 

 “If the surviving spouse' elects to take under the will, such spouse shall be thereby barred of all right to an intestate share of the estate, and shall take under the will alone, unless it plainly appears from the will that the provision therein for the spouse was intended to be in addition to an intestate share. But an election to take under the will does not bar the right to remain in the mansion of the deceased consort, or the widow to receive one year’s allowance for the support of herself and children, as provided by law,
 
 unless the will expressly othenvise
 
 directs.” (Italics ours.)
 

 The italicized language was carried into the amendment of the foregoing section to be found in 116 Ohio Laws, 390, which became effective in 1935. The present act (119 Ohio Laws, 397) contains the same language although differently arranged.
 

 Item IV of Mr. Bolles’ will provides:-
 

 “The property herein given to my said wife, Clara C. Bolles, and the provisions which I have made for her with The Toledo Trust Company, are and shall be taken by her in lieu of all her rights, claims and estates given to her by law, by way of dower or otherwise.”
 

 We think that the will expressly directs the exclusion of the year’s allowance. The word “expressly”
 
 *228
 
 as used in Section 10504-61, General Code, cannot be construed to mean “explicitly” but rather the opposite of “impliedly.”
 

 Counsel for Mrs. Bolles claim that, notwithstanding the change in the statutory provision, the rule of
 
 ejusdem generis
 
 should be applied to the word “otherwise” and thereby limited to the phrase “by way of dower.” We do not think that the wording of item IY of the will calls for the application of the doctrine of
 
 ejusdem generis.
 
 Expressly and clearly the testator provided that the provision made for her in the will and trust No. 331 shall be taken in lieu of all of her rights, claims and estates
 
 given to her by law
 
 and the words “by way of dower or otherwise”'-instead of limiting the preceding words, make them all-inclusive. See 41 Ohio Jurisprudence, 927, Section 808; 140 A. L. R., 1220.
 

 Our attention has been called to the case of
 
 Collier
 
 v.
 
 Collier’s Exrs.,
 
 3 Ohio St., 369, which involved an estate where the testator died while the act of March 23, 1840, “relating to wills” (Sections 45 and 46, 38 Ohio Laws, 126), and the act of the same day, entitled “An act to provide for the settlement of the estates of deceased persons” (Section 45, 38 Ohio Laws, 154) were in force. That case was correctly decided under the law as it then stood.
 

 While the
 
 Collier
 
 ease has been cited hi
 
 Inter
 
 cases the change in the statutory law since the decision in the
 
 Collier case
 
 was not noted, e.
 
 g., Bane v. Wick,
 
 14 Ohio St., 505, 513;
 
 Spangler
 
 v.
 
 Dukes,
 
 39 Ohio St., 642. Neither of the last, mentioned cases involved facts sufficiently similar to control here.
 

 Summarizing our conclusions:
 

 • A. In the event the widow elects to take under the statute of descent and distribution she will be entitled to her distributive share of the net estate which includes the property in trusts Nos. 331 and 520. (Section 10504-55, General Code, 114 Ohio Laws, 356.)
 

 
 *229
 
 B. In the event the widow elects to take under the will she will not be entitled to the amount allotted and set off to her for a year’s support.
 

 C. (Which includes what we have denominated as subsidiary questions)
 

 (1) It was the intention of the testator to incorporate by reference in his will the terms and provisions of trust No. 331.
 

 (2) Item III of the will is not to be construed as recognizing the trust company and trust No. 331, as facts of independent significance but on the contrary as an incorporation by reference of the terms and provisions of trust No. 331.
 

 (3) So long as there was a-valid incorporation by reference of trust No. 331 it is immaterial, whether it was a trust or an agency for the reason that the agency terminated at testator’s death and the property passed according to the terms and conditions incorporated in the will.
 

 (4) The provisions of item III do not create a trust in addition to trust No. 331, that is, Mrs. Bolles is not entitled to two monthly allowances of $500 each during her lifetime.
 

 (5) Trusts No. 331 and No. 520, taken in connection with the contemporaneous execution of the will and trust No. 331 and the value of the
 
 res
 
 prior to testa-, tor’s death in the respective trusts, are illusory as to the widow’s rights.
 

 (6) Neither trust No. 331 nor trust No. 520 is void as constituting an agency rather than a trust. Even if either or both of these trusts were to be held to be mere agencies, nevertheless the
 
 res
 
 of each of them would pass under item III of the will and be distributed according to the terms and conditions of trust No. 331 incorporated by reference in the will.
 

 (7) A testator may by substitute provision deprive his widow of the year’s allowance set off by the ap
 
 *230
 
 praisers if his will so expressly directs, if she elects to take under the will.
 

 Inasmuch as it is conceded by the executor, and trustee that in,,the event Mrs. Bolles elects to take under the will she will be entitled to retain the $2,500 set off to her as exempt from administration, we need not go into that matter but merely refer to Sections 10509-54 and 10504-61, General Code, as enacted 114 Ohio Laws, 413 and 357, respectively, in effect at the time of the death of Mr. Bolles.
 

 What we have said above should dispose also of the claims of the children.
 

 The matter of the fees of the guardian
 
 ad litem
 
 of Barbara Ruth Bolles as a part of the costs is left open.
 

 Therefore, the decree,, judgment and finding of the Court of Appeals should be and hereby is reversed and the cause remanded to the Court of Appeals with instructions to modify paragraphs numbered 2, 3 and 4 of its journal entry of January 25, 1944, in this cause in accordance with the foregoing opinion; paragraphs numbered 3, 5, 6, 7, 8 and 9 thereof being hereby affirmed.
 

 Judgment reversed in part and affirmed in part.
 

 Matthias, Hart, Bell and Williams, JJ., concur.