Doyle, J.
The judgment under review was predicated in the Court of Appeals, as it was in the Court of Common Pleas, upon the cases of Bolles v. Toledo Trust Co., Exr., 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R., 1164, and Harris v. Harris, a Minor, 147 Ohio St., 437, 72 N. E. (2d), 378. In this posture of things it is our purpose to re-examine the extreme position taken in the Bolles and Harris cases, in the light of the statutory law of this state, the previous decisions of this court and the more recent trend in the law tending to recognize the inter vivos trust in its traditional form.
Section 1335.01, Revised Code, provides:
“All deeds of gifts and conveyances of real or personal property made in trust for the exclusive use of the person making the same are void, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend, or revoke such trust, and such trust is valid as to all persons, except that any beneficial interest reserved to such creator may be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court, at the suit of any creditor of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same.”
In 1 Restatement of the Law of Trusts (2d), Section 57, it is stated:
“Where an interest in the trust property is created in a beneficiary other than the settlor, the disposition is not testamentary and invalid for failure to comply with the requirements of the statute of wills merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to *495 modify the trust, and a power to control the trustee as to the administration of the trust.”
In Adams Admx., v. Fleck (1961), 171 Ohio St., 451, 456, 457, 172 N. E. (2d), 126, Judge Taft observed:
‘ ‘ Those who endeavor to find a reasonable explanation for legal conclusions have had difficulty for quite some time in explaining how, by setting up a trust, an owner of property can in effect make a gift of it although he does not relinquish any right to its enjoyment during his lifetime and also retains the right during his life to change his mind about the gift and get back what he has given. * * *
“That this court has had the same difficulty is quite evident from the opinions in Union Trust Co. v. Hawkins, Admr. * * * (121 Ohio St., 159); Cleveland Trust Co., Trustee, v. White (1938), 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475; Schofield, Trustee, v. Cleveland Trust Co. (1939), 135 Ohio St., 328, 21 N. E. (2d), 119; Central Trust Co. v. Watt (1941), 139 Ohio St., 50, 38 N. E. (2d), 185; Bolles v. Toledo Trust Co., Exr. (1941), 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R. 1164; and Harris v. Harris, a Minor (1947), 147 Ohio St., 437, 72 N. E. (2d), 378.”
In the first hearing of Union Trust Co. v. Hawkins (1929), supra, the court expressed fear that if revocable trusts were upheld they would be used as a substitute for wills, and the trust was struck down because it provided (1) that it should terminate on the death of the settlor, (2) for a reservation of power by the settlor to control investments, (3) for the retention of a life interest in the settlor, and (4) that a power of revocation was retained by the settlor. Also, a provision with respect to the payment of taxes was considered important.
Upon rehearing (121 Ohio St., 159, supra), the court upheld the trust on the basis of the statute, stating, in effect, however, that apart from the statute the reservation of power of revocation would make the trust testamentary.
The pertinent parts of 'the statute were then as they are now. See Section 1335.01, supra.
The views expressed in that case were contrary to the weight of authority in other jurisdictions at the time and were *496 not followed several years later in Cleveland Trust Co., Trustee, v. White, 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475.
In the White case the settlor transferred real property and stocks to The Cleveland Trust Company for trust purposes. The deeds were not recorded, nor were the stock certificates transferred in the name of the trustee, until after his death. The settlor reserved to himself a life income from the trust, the right to use the real property, certain stock voting rights, and the power to revoke, alter, and modify the trust in whole or in part if the directors of the trustee acquiesced. He also reserved the right of supervision of investments and reinvestments.
The court, in its review of the case, was precluded from considering the statute, as the trust was executed prior to its enactment in its present form. In finding the trust valid, the court stated:
“* * * certain language in the opinion in the Hawkins case, unnecessary to a decision on the ground adopted by the court, is to the effect that in the absence of a statute permitting it, a valid trust cannot be recognized where the settlor reserves the right of revocation. Such expression is opposed to the rule announced by all the courts of last resort in other jurisdictions which have spoken on the subject, and cannot be controlling in Ohio * * *.”
The court then proceeded to rule that a trust, otherwise effective, is not rendered nugatory because the settlor reserves to himself the following rights and powers:
1. The use of the property and the income therefrom for life;
2. The supervision and direction of investments and re-investments ;
3. The amendment or modification of the trust agreement;
4. The revocation of the trust in whole or in part;
5. Consumption of principal, when the exercise of such reserved lights and powers as to amendment and modification, revocation and consumption of principal is made dependent upon the acquiescence and approval of the trustee, other than the settlor'himself.
The court observed further:
*497 “It is evident that cases of the type now under consideration must be decided on their particular facts. Where the settlor retains powers which in their cumulative effect amount to ownership of the trust estate with such control over the administrative functions of the trustee as to make him simply the settlor’s representative, no trust is established and the courts have so declared. ’ ’
We next meet Schofield, Trustee, v. Cleveland Trust Co., 135 Ohio St., 328, 21 N. E. (2d), 119. A Cleveland doctor conveyed to The Cleveland Trust Company a parcel of real property. The deed was immediately recorded. The donor received the net income from the trust estate during his lifetime, as well as the right to occupy the real estate, but released the trustee from the payment of taxes and insurance, unless requested in writing. The trustee was required to obtain the donor’s written approval as to all sales and purchases of property connected with the trust. The donor reserved the right to revoke the agreement at any time during his lifetime, wholly or in part, and at the donor’s death distribution was to be made to his wife and his daughter in equal parts.
The settlor died insolvent without revoking the trust. No creditor had attacked the conveyance during the settlor’s lifetime. The suit instituted by creditors after the settlor’s death sought to declare the trust invalid, or at least to have the corrvus applied for the payment of debts commencing following the creation of- the trust. The trial court held the instrument invalid, the Court of Appeals, in an appeal on questions of law and fact, held the trust valid, and this court affirmed the judgment of the Court of Appeals.
Paragraph two of the syllabus in that case states:
“Where the owner of property has conveyed it to another under a trust instrument, containing a power of revocation,, to hold such property for the benefit and enjoyment of the settlor during his life and at his death to distribute the same among designated beneficiaries, such trust, lacking fraud, is not voidable by subsequent creditors.”
In applying the law to the facts, Zimmerman, J., adopted the generally accepted rule that a trust is not testamentary *498 merely because the settlor reserves power to approve ‘ ‘ all sales and purchases of property connected with the trust,” and retains the income thereof for life and the right to revoke the agreement. In so doing, Zimmerman, J., interpreted, with the concurrence of three of his associates, the controversial fourth paragraph of the syllabus in the White case that “no valid trust is established where the settlor reserves powers which in their cumulative effect amount to ownership of the trust estate with such control over the administrative functions of the trustee as to make of him simply the settlor’s agent or representative,” which syllabus Zimmerman, J., as a judge of this court, had previously written.
Several years later Central Trust Co. v. Wait, 139 Ohio St., 50, 38 N. E. (2d), 185, was decided. A majority of the court concurred in the view, that although the donor reserved the right of wide control over the fund during his lifetime, the legal title passed to the trustee, “and the fact that a donor retains the income for life and the right to revoke the trust in his lifetime does not render it void.”
In answering the claim that an agency, and not a trust, was created when’ the donor reserved the right to direct the trustee as to the manner of investing and reinvesting funds, it was declared:
“Solicitude on the part of the donor for the safety and integrity of trust funds does not per se indicate that he is dealing with his own property. ‘By the weight of authority, a trust, otherwise effective, is not rendered nugatory because the settlor reserves to himself the following rights and powers: (1) The use of the property and the income therefrom for life; (2) the supervision and direction of investments and reinvestments; (3) the amendment or modification of the trust agreement; (4) the revocation of the trust in whole or in part; (5) the consumption of the principal.’ * m * Cleveland Trust Co., Trustee, v. White * * * [134 Ohio St., 1, 15 N. E. (2d), 627]. See, also, Houston’s Estate, 276 Pa., 330, 120 A., 267; Jones, Admr., v. Old Colony Trust Co., 251 Mass., 309, 146 N. E., 716; 3 Cincinnati Law Review, 361; 43 Harvard Law Review, 521, 533.”
From the foregoing decisions, at least after the decision in *499 Union Trust Co. v. Hawkins, supra, it appears that at least a majority of the judges have consistently upheld the validity of trusts, including the various features hereinbefore stated, and concluded that the control exercised by the settlor was for the benefit of the trust and its beneficiaries and not for the settlor’s individual interest as owner of.the fund. A minority of the judges in their dissents expressed divergent thought on the legal question involved.
In the year 1944, the case of Bolles v. Toledo Trust Co., supra, was heard on review. Here, for the first time, there was presented, in concreté form, the problem of whether a wife, who survived the settlor, could take her distributive share, under the laws of descent and distribution, out of property held in a trust inter vivos over which the husband had retained the right of revocation and through which he had received income and enjoyment.
Despite previous pronouncements of basic principles in trust law in the White and Schofield cases involving the rights of trust remaindermen and creditors of the settlor, the court ruled, as follows, in paragraphs one, two and three of the syllabus:
“1. A husband may dispose of his personal property during his lifetime without the consent of his wife; but a husband may not bar his loidow of her right to a distributive share of any property which he owns and of which he retains the right of disposition and control up to the time of his death.
“2. Section 8617, General Code [now Section 1335.01, Revised Code], which provides that a revocable and- amendable living trust ‘shall be valid as to all persons’ except creditors, does not deprive the settlor of all dominion over the trust res so that a widow electing to take under the statute of descent and distribution is barred from claiming a distributive share of the property in such trust.
“3. The transfer of property to a trustee under agreement whereby the settlor reserves to himself the income during his life with the right to amend or revoke,, is valid by virtue of Section 8617, General Code [now Section 1335.01, Revised Code], but under stich a trust agreement settlor does not part absolutely ivith the dominion of such property and his widow *500 electing to take under the statute of descent and distribution may assert her right to a distributive share of the property in such at settlor’s death.” (Italics ours.)
That decision marked a substantial departure from principles of' laws theretofore established in this state. The trust was held to be valid and nontestamentary, but, nevertheless, the widow was held to be entitled to her testamentary share.
If a valid trust inter vivos was created, title in the corpus passed to the trustee, and nothing remained in the settlor except the right to revoke, alter, or amend the agreement. At the time of settlor’s death, if the agreement had not been revoked, altered, or amended, the title to the trust property was still in the trustee, subject to distribution under the trust instrument, and it is difficult to see how a part of the trust property could pass to the settlor’s administrator or executor. If the trust was, in reality, “illusory,” as the court held it to be, then it was not a valid trust, and all of the property in it should have passed to the settlor’s administrator or executor.
The word, “illusory,” was defined as follows, “deceiving, or tending to deceive; fallacious, illusive,” and in this connection the writer of the opinion observed that “this criticism does not necessarily affect the validity * * * under Section 8617, General Code [now Section 1335.01, Revised Code], but it is intended to show that such trusts may not be used as a device to deprive the widow of her distributive share of the property possessed by her husband at the time of his death. To the extent that such an arrangement, if allowed to stand, would deprive the widow of her distributive share of property, it is voidable at the instance of the widov.”
It is here observed that the statute gave validity to the Bolles trust and made no exception in the wife’s favor. Furthermore, if, as indicated above in the quoted part of the opinion, the wife was entitled to her share in the “property possessed by her husband,” then the entire trust should have failed, as the trustee was possessed of no property.
Several years after the Bolles case was decided, Harris v. Harris, supra, came before the court. Here a majority of the court purportedly followed the decision in the Bolles case. The syllabus in the Harris case reads:
*501 “Under the provisions of Section 8617, General Code [now Section 1335.01, Revised Code], the transfer of property to a trustee is valid under an agreement whereby the settlor reserves to himself the income during life with the right to amend or revoke; but when such settlor does not part with dominion and control over the trust property, his widow may elect to take under the statutes of descent and distribution and may assert her right to a distributive share of such property after his death. (Paragraph three of the syllabus in the case of Bolles v. Toledo Trust Co., Exr., 144 Ohio St., 195, approved and followed.) ”
The phrase, “dominion and control,” as used in that syllabus, of course was construed in the Bolles case (paragraphs two and three of the syllabus) with the statement that if a settlor “reserves to himself the income during his life with the right to amend or revoke,” he has not parted absolutely with dominion over the property.