PURCELL, PLAINTIFF, *v.* CLEVELAND TRUST COMPANY, EXR., ET, DEFENDANT.

Probate Court, Cuyahoga County.

No. 584452.   Decided July 20, 1964.

*Mr. Paul B. Roesch* and *Mr. Andrew J. McLandrick,* for plaintiff, J. Ambrose Purcell of Counsel: Calfee, Fogg, McChord & Halter.

*Mr. Peter Reed, Mr. Thomas V. Koykka, Mr. Joseph A. Rotolo, Messrs, Arter, Hadden, Wykoff & Van Duzer,* for defendants, The Cleveland Trust Company, as Trustee of the Jessie Wheeler Purcell Trust, as Executor of the Jessie Wheeler Purcell Estate, and as Trustee of The Cleveland Foundation.

*Mr. Warren Daane, Messrs. Baker, Hostetler & Patterson,* for Grace W. Davis and William T. Davis.

456

*Mr. William B. Saxbe*, attorney general, for the State of Ohio.

MERRICK, P. J. The objection to the jurisdiction of this Court in this case is dismissed on authority of *In re Morrison Estate*, 159 Ohio St., 285.

The question posed in this case has troubled courts and judges since 1921 when the Ohio legislature authorized and gave recognition to the *inter vivos* trust. Prior to that date, there was no authority for its existence or validity. As a matter of fact for a century before, a trust for the use of the settlor making the same was void and of no effect. Then came the 1921 amendment under the then title of Section 8617, General Code.

For forty years this statute, later titled Section 1335.01, Revised Code, remained in force and effect in the following language:

"All deeds of gifts and conveyances of real or personal property made in trust for the exclusive use of the person making the same are void, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend, or revoke such trust, and such trust is valid as to all persons, except that any beneficial interest reserved to such creator may be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court, at the suit of any creditor of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same."

Needless to say, many courts have attempted to interpret the impact of this statute, especially as it affected the rights

of a surviving spouse who elected to take against a will which provided a pour-over or enveloping clause as to the *inter vivos* trust.

It will serve no useful purpose to cite or comment on any cases decided prior to *Bolles* v. *Toledo Trust Co.*, 144 Ohio St., 195 (year 1941). In that case, the syllabi stated that a spouse may not bar a surviving spouse of his or her right to a distributive share of any property which he or she owns and retains the right of a disposition and control to the time of his or her death. It specifically held that *inter vivos* trusts created under then titled Section 8617, General Code, could be invaded by the election of the surviving spouse to take under the law. It further referred to the arrangement of a "purported trust" as actually being a "mere agency." At page 215, the opinion contains this interesting comment:

"We may go a step further and say that irrespective of the husband's intention, if the effect of the device resorted to is such as to cut down or deprive the widow of the right given her under Section 10504-55, General Code, such device is voidable when challenged by the widow.

"We are of the opinion that a wife's right to elect to take under the law places her in a higher position than a mere creditor in respect of the personal property in an unrevoked revocable trust."

Six judges concurred in the decision. There was no dissent.

One year after the decision in the *Bolles case, supra*, the case of *Harris* v. *Harris*, 70 Ohio App., 443 (year 1942), was before the Summit County Court of Appeals. The facts and question were almost identical, and in citing the *Bolles case* "for the rationale of this decision," the three judges of that court ruled that the *inter vivos* trust was such that "the settlor has not parted with such dominion over his property as to preclude her from claiming and receiving a distributive share out of the corpus of the trust." At page 448 of the opinion, the court had this comment:

"In addition to being ruled in this decision by the sufficiently parallel *Bolles case*, and the propositions of law therein set forth in the syllabus, and independently of the arguments advanced by Judge Turner in support of the decision in that

458

case, the members of this court are of the opinion that there is a public policy involved in protecting a wife's interest in personal property over which a husband has retained substantial dominion and control, the legal title to which has been conveyed by a trust *inter vivos*. The term "public policy" is used in the sense of that which harmonizes with the morals of the time and with the established interests of society. The wife's interest is not an interest in property which a husband possesses during his lifetime, but as against *cestius due trustent*, is a paramount right, growing out of the marital contract, which a wife possesses, that her husband shall not deprive himself of ownership of his personal property so as to shear her of the benefits thereof upon his death, while at the same time securing to himself, dominion and the right of control; and, under the circumstances where this right comes into conflict with the provisions of a trust of the kind presented in this case, the provisions of the trust must yield to the right of the wife to participate in the property of the trust. . . ."

This was affirmed (4-3) by the Supreme Court, *Harris* v. *Harris*, 147 Ohio St., 437 (year 1947).

The next time the Supreme Court considered the question was in *Adams* v. *Fleck*, 171 Ohio St., 451 (year 1960). The opinion in this case contains this interesting dictum at page 456:

"Those who endeavor to find a reasonable explanation for legal conclusions have had difficulty for quite some time in explaining how, by setting up a trust, an owner of property can in effect make a gift of it although he does not relinquish any right to its enjoyment during his lifetime and also retains the right during his life to change his mind about the gift and get back what he has given."

This decision cites Brown on Personal Property (2nd. Ed.), 57, at pages 175, 176 and 180, and several cases previously decided by the Supreme Court, including the *Bolles* and *Harris* cases. The opinion then continues as follows on page 457:

"Those who promulgated the Restatement of the Law of Trusts apparently also had the same difficulty. Thus, in Section 57 of the original Restatement, it is stated that 'where the settlor . . . reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust

that the trustee is the agent of the settlor, the disposition so far as . . . intended to take effect after his death is testamentary and . . . invalid' if there is not compliance with the statutes relating to wills.''

On page 458, the court cites the changes in the Restatement of the Law of Trusts, as revised in 1947 and 1957, indicating a trend to recognition of *inter vivos* trusts created by formal contract without fraud. However, the court then states the following:

''Probably, it is no more radical to regard such a formal instrument, definitely establishing a donor's intention as a judicially sanctioned substitute for the statutorily required formalities of a will than it is to regard part performance of a contract to convey real estate as a judicially sanctioned substitute for the written memorandum required by the statute of frauds.''

This last pronouncement really meant that the statutes pertaining to wills might not be demanding what the language implies or connotes, viz: You might not have to observe the requirements of the statutory provisions or the import thereof. That is, you do not need a written instrument signed at the end and declared by the testator in the presence of two witnesses as his last will to pass property after death: just go part of the way and the deed is done!

On December 20, 1961, in *Smyth* v. *Cleveland Trust Co.*, 172 Ohio St., 489, the Supreme Court reversed the *Bolles* and *Harris* cases and blocked the surviving spouse from invading the so-called revocable *inter vivos* trust in an election to take under the law. The widow was completely denied a right to invade the trust as a result of the decision, although she was left the income, with the right vested in the trustee to invade the principal to provide for her comfort and care during her lifetime.

At page 503 of the opinion in the *Smyth case* (*supra*) is this language:

The law as it is now stated in the concluding paragraph (page 503) of the *Smyth case* opinion is as follows:

''We reject the rule of the *Bolles* and *Harris cases*, to the effect that, if a settlor reserves to himself the income during life, with the right to amend or revoke the trust or any part

thereof, such reserved rights and powers defeat the parting with dominion over the trust property and thereby create a right in the widow to assert 'her right to a distributive share of the property in such [trust] at settlor's death.' Neither the statute [* * *] nor the general rule recognized as existing in the majority of courts of last resort and stated in the Restatement of the Law, *supra*, justifies the continued recognition in this state of the rule enunciated in the *Bolles* and *Harris cases*."

Following this complete reversal of its former decisions by the Supreme Court there followed much discussion in the inns of court or whatever might be the Ohio contemporary: the gathering places of lawyers and judges. The echoes reached the legislative halls and action was forthcoming. As in many instances in the past, legislation was sought to reverse the theory in the *Smyth case* and statutorily support the theory of the *Bolles* and *Harris cases*.

For the first time in Ohio a statute was passed enabling full pour-overs between *inter vivos* trusts and testamentary disposition by will without a new will or codicil being required for each change in the trust instrument. To put it in another way, by reference in the will to the *inter vivos* trust, amendments could be made without re-reference by codicil or a new will. Thus Ohio became one of the states recognizing this theory and approving it by statute. But there were many grumbling about the decision in the *Smyth case* and the legislature did something about the matter.

The new statute specifically preserved the right of election by the surviving spouse. The entire statute, effective January 23, 1963, is as follows:

"Section 2107.63, Revised Code. Addition to trust estate.

"A testator may by will devise, bequeath, or appoint real or personal property, or any interest in such property, to a trustee of a trust which is evidenced by a written instrument executed by the testator or any other person either before or on the same date of the execution of such will and which is identified in such will.

"The property or interest so devised, bequeathed, or appointed to such trustee shall be added to and become a part of the trust estate, shall be subject to the jurisdiction of the court having jurisdiction of such trust, and shall be administered in

accordance with the terms and provisions of the instrument creating such trust, including, unless the will specifically provides otherwise, any amendments or modifications thereof made in writing before, concurrently with, or after the making of the will and prior to the death of the testator. The termination of such trust, or its entire revocation prior to the testator's death, shall invalidate such devise, bequest, or appointment to such trust.

"This section shall not affect any of the rights accorded to a surviving spouse under Section 2107.39, Revised Code.

"This section applies to wills executed before October 5, 1961, as well as to wills executed thereafter. (130 v H 1 Eff. 1-23-63. 129 v 7)"

In the year 1957, Jessie Purcell, entered into a revocable amendable *inter vivos* trust with The Cleveland Trust Company as trustee. It follows the form usually found in these instruments, including pour-over possibility by her will, which she executed simultaneously with the trust instrument. She died January 15, 1960. In proper time and method, her surviving spouse elected against the will. Transfer to him of his statutory share from the trust was demanded by him and refused by the bank which was both executor and trustee. Thereupon the within action was instituted, seeking a declaratory judgment as to whether, by reason of his election, he was entitled to his statutory share under the law of descent and distribution.

At the time of Mrs. Purcell's death, the decisions in the *Bolles* and *Harris cases* (*supra*) was the case law of the question in this case. At the time of the filing of the petition herein, the case controlling precedent was in support of the prayer of the petitioner, the surviving spouse.

The defendant refused to recognize the theory of the *Bolles* and *Harris cases* and awaited the decision in the *Smyth case*, then pending in the lower courts. The trial court and the Court of Appeals followed the rule of the *Bolles* and *Harris cases* in the *Smyth case*, but the Supreme Court reversed itself as hereinbefore indicated.

Is this court bound by the *Smyth case* ruling? A careful review of the chronological order of occurrences and decisions herein will quickly point up that, in the first session of the

legislature following the decision in the *Smyth case*, the lawmakers reversed the theory of the court in that case and by statutory enactment recognized the right of the surviving spouse to invade the trust corpus by election against the will.

It is plain, that in enacting the first full bodied pour-over statute with all privileges and rights in the settlor during life, the legislature specifically reserved to the surviving spouse, the right to elect against the will with whatever advantages would be forthcoming. What else was the purpose of these words in that statute?

"This section shall not affect any of the rights accorded to a surviving spouse under Section 2107.39, Revised Code."

To further implement the effect of this new statute, the closing sentence and paragraph shows clearly the intent of the lawmakers:

"This section applies to wills executed before October 5, 1961, as well as to wills executed thereafter."

In Ohio there is no inherent right to make a will. The right to dispose of property by will is given and the manner of exercising it is prescribed by statute. *In re Estate of Miller*, 160 Ohio St., 529. The Supreme Court of Ohio has consistently held that jurisdiction is conferred upon the Probate Court by the constitution, and has recognized the power of the General Assembly to define the jurisdiction and powers of the Probate Court consistent with but not in limitation of the jurisdiction constitutionally granted. *In re Estate of Miller, supra.* The General Assembly has the power to define, limit and restrict the testamentary disposition of property. Property does not pass under will by any natural right. Its transmission by way of inheritance or otherwise, after death is solely by virtue of our statutes. *Lozier* v. *Lozier*, 99 Ohio St., 254; *Hane* v. *Kintner*, 111 Ohio St., 297; *Sherman* v. *Johnson*, 159 Ohio St., 209.

The matter of the wisdom or good policy of a legislative act is a matter for the Legislature to determine. The courts are required to give effect to the legislative act if it does not violate the Constitution. *Kar Co.* v. *Finkler*, 155 Ohio St., 550.

It must be recognized that if the Legislature, in creating the right of pour-over from an estate into an *inter vivos* trust, desired to insist on the right of the surviving spouse to elect under the statute and further provide that no language in such

legislation should be interpreted as denying this right, no court can write these rights out of the statute. It must be presumed, that in converting the right to incorporate in a will by reference into an expanded right of pour-over, the legislature had the power to preserve the right of election, all judicial decisions to the contrary, notwithstanding.

The writer of this opinion did not agree with the decision or reasoning of the Supreme Court in *Smyth* v. *Cleveland Trust Co., supra.* But as a trial court may disagree with a reviewing court, it must follow such precedent as is thus created.

However, it is also the firm conviction of the writer of this opinion that the legislature deliberately and directly disagreed with the Supreme Court and the language in the pour-over statute indicates and points up this disagreement.

This court feels obligated to follow the statute passed after the decision in the *Smyth case*, which definitely re-instates the theories and decisions in the *Bolles* and *Harris cases.* This reasoning is in accord with that of Judge Taft in his opinion in the case of *Sherman* v. *Johnson,* 159 Ohio St., 209, where at page 223, he says:

"It is the duty of this court to give effect to the intention so expressed in that statute and not to amend or repeal the statute."

While the eminent judge was referring to a statute other than the one in the instant case, the reasoning can be directed to any statute, especially when newly enacted or amended to accomplish a particular purpose.

This court is of the opinion and so finds that while the Supreme Court reversed itself as on record in the *Bolles* and *Harris cases,* by its decision in the *Smyth case,* that as quickly as possible thereafter, the Legislature for all practical purposes reversed the Supreme Court.

A journal entry may be submitted granting the plaintiff the right to invade the corpus of the trust to the extent of one-half thereof, which is in accordance with his election and the statutes of descent and distribution.