Marshall, C. J.
 

 These two agreements must be construed together as one and as of the date of the supplemental agreement, to wit, January 22, 1923. It results that the legislation enacted August 14, 1921, must be read into the agreements. The controversy relates to that paragraph of the supplemental agreement reading as follows:
 

 “If the trust created by said agreement shall not be terminated during the lifetime of first party as herein provided it shall terminate on her death and said note and mortgage, or the proceeds thereof, shall be paid over, transferred, and distributed share and share alike to Edward Calvin Hawkins, of Rocky River, Ohio, and Maude Ida Paddock, of North 01m-stead, Ohio, son and daughter of first party, the heirs of the body of either of them who may not survive first party to take the share of such deceased one; and the balance of the trust estate shall be paid over, transferred, and delivered to John W. Hawkins, son of first party, or to the heirs of his body per stirpes.”
 

 It is contended that this was an attempted testamentary disposition, and that it was not valid or effective because the instrument was not executed with the formality of a last will and testament. It is the contention of the trust company that the agreement was valid, and that it might make disposition of the property to take effect after the death of Mrs. Hawkins under the common law; and, second, that
 
 *167
 
 authority has been given to execute such a trust by an amendment to Section 8617 of the General Code, which became effective August 14, 1921 (109 Ohio Laws, 215), which obviated the necessity of executing the trust agreement with the formality of a last will and testament. These two propositions will be discussed in the order named.
 

 The attempted transfer of property to certain favored children of Mrs. Hawkins, to take effect at the time of her death, was in every sense a gift, and it was no less a gift by reason of it being made through the medium of a trustee. A gift whether made directly to the donee, or in trust for him, must be measured by the same tests to determine its validity. One of the essentials of a valid gift is that there must be a delivery. A great variety of circumstances have been held to constitute a delivery, whether actual or symbolical depending upon the character of the property, and the purposes to be carried out. Whatever liberality of views may be found in dealing with the subject of delivery in relation to gifts, authorities are generally agreed that the donor must have parted absolutely with the title, without reservations and without the power of alteration or revocation. We are able to find only one authority which does not concur in the otherwise universal rule that where the gift is direct and not through the medium of a trustee there must be a complete surrender of title. The single contra case is
 
 Blanchard
 
 v.
 
 Sheldon,
 
 43 Vt., 512. It should be added, however, that the case of
 
 Barlow
 
 v.
 
 Loomis
 
 (C. C.), 19 F., 677. was decided on the authority of the Vermont case. The following cases hold that an attempted gift is invalid if a power of revocation
 
 *168
 
 or control is retained in the donor. These cases apply the principle to a great variety of circumstances, but many of them hold that the rule is the same whether the gift is
 
 inter vivos
 
 or
 
 causa mortis.
 
 These cases constitute a selection out of a great multitude of cases which might be cited.
 
 Mims
 
 v.
 
 Ross,
 
 42 Ga., 121;
 
 Selleck
 
 v.
 
 Selleck,
 
 107 Ill., 389, 394;
 
 Barnum, Exr.,
 
 v.
 
 Reed,
 
 136 Ill., 388, 389, 398, 26 N. E., 572;
 
 Telford
 
 v.
 
 Patton,
 
 144 Ill., 611, 620, 33 N. E., 1119;
 
 Roberts
 
 v.
 
 Draper,
 
 18 Ill. App., 167, 170;
 
 Trustees of Ill. Christian Missionary Convention
 
 v.
 
 Hall, Admr.,
 
 48 Ill. App., 536, 537, 544;
 
 Smith, Admr.,
 
 v.
 
 Dorsey,
 
 38 Ind., 451, 453, 10 Am. Rep., 118;
 
 Daubenspeck, Admr.,
 
 v.
 
 Biggs, Admr., 71
 
 Ind., 255, 256, 259;
 
 Calvin, Admr.,
 
 v.
 
 Free,
 
 66 Kan., 466, 470, 71 P., 823;
 
 Walden’s Admrs.
 
 v.
 
 Dixon,
 
 5 T. B. Mon. (Ky.), 170;
 
 Dole, Admr.,
 
 v.
 
 Lincoln,
 
 31 Me., 422, 428;
 
 Allen, Admr.,
 
 v.
 
 Polerecsky,
 
 31 Me., 338, 340;
 
 Bickford
 
 v.
 
 Mattocks, Admr.,
 
 95 Me., 547, 549, 50 A., 894;
 
 Hitch
 
 v.
 
 Davis,
 
 3 Md. Ch., 266;
 
 Pennington, Admr.,
 
 v.
 
 Gittings, Exr.,
 
 2 Gill
 
 & J.
 
 (Md.), 208, 209, 217;
 
 Murray
 
 v.
 
 Cannon, Admx.,
 
 41 Md., 466, 476;
 
 Northrop
 
 v.
 
 Hale, Admr.,
 
 73 Me., 66, 69;
 
 Snyder
 
 v.
 
 Snyder,
 
 131 Mich., 658, 92 N. W., 353;
 
 Holmes
 
 v.
 
 McDonald,
 
 119 Mich., 563, 565, 78 N. W., 647, 75 Am. St. Rep., 430;
 
 Chaddock
 
 v.
 
 Chaddock,
 
 134 Mich., 48, 50, 95 N. W., 972;
 
 Irish
 
 v.
 
 Nutting, Admr.,
 
 47 Barb. (N. Y.), 370, 383;
 
 Curry
 
 v.
 
 Powers, Exr.,
 
 70 N. Y., 212, 217, 26 Am. Rep., 577;
 
 In re Bauernschmidt’s Estate,
 
 97 Md., 36, 59, 60, 54 A., 637;
 
 Matthews
 
 v.
 
 Hoagland,
 
 48 N. J. Eq., 455, 456, 485, 21 A., 1054;
 
 Liebe
 
 v.
 
 Battmann,
 
 33 Or., 241, 245, 246, 54 P., 179, 72 Am. St. Rep., 705;
 
 Walsh’s Appeal,
 
 122 Pa., 177, 180, 15 A., 470, 9 Am. St. Rep., 83, 1 L. R. A., 535;
 
 *169
 

 Safer
 
 v.
 
 McKelvey,
 
 23 Pa. Super. Ct., 202, 205;
 
 Marshall
 
 v.
 
 Russell,
 
 93 Tenn., 261, 266, 25 S. W., 1070;
 
 Sterlings. Wilkinson,
 
 83 Va., 791, 797, 3 S. E., 533;
 
 Dickeschied
 
 v.
 
 Exchange Bank,
 
 28 W. Va., 340, 359;
 
 Allen-West Commission Co.
 
 v.
 
 Grumbles
 
 (C. C. A.), 129 F., 287, 290; Thornton on Gifts and Advancements, 85, 87.
 

 The decisions in Ohio are in full accord with the cases already cited. These principles were declared more than 60 years ago by this court in
 
 Phipps
 
 v.
 
 Hope,
 
 16 Ohio St., 586, in the first and second paragraphs of the syllabus:
 

 “1. To constitute a valid gift, either
 
 inter vivos
 
 or
 
 causa mortis,
 
 a delivery, either actual, constructive. or symbolical, is essential.
 

 “2.
 
 Directions by an owner, in respect to a disposition of his property, to take effect after his death, and different from such as the law would prescribe in case of intestacy, are of no validity unless made through the medium of a last will and testament.”
 

 In
 
 Polley and Hicks, Admrs.,
 
 v.
 
 Hicks,
 
 58 Ohio St., 218, 224, 50 N. E., 809, 811 (41 L. R. A., 858), referring to a gift
 
 inter vivos,
 
 it was said: “By delivery and acceptance the title passes, the gift becomes perfect and is irrevocable.”
 

 In
 
 Gano
 
 v.
 
 Fisk,
 
 43 Ohio St., 462, 3 N. E., 532, 54 Am. Rep., 819, the court declared: “Gifts
 
 causa mortis
 
 have the nature of a legacy, and the policy of our law does not favor them while there is provision, by the statute of wills and the law of descents, for the transmission of all property rights. ’ ’
 

 These principles were again discussed in
 
 Flanders
 
 v.
 
 Blandy,
 
 45 Ohio St., 108, 12 N. E., 321, where con
 
 *170
 
 elusions were reached in entire harmony with the claims of the administrator in the instant case. It does not appear that the children of Mrs. Hawkins knew anything of the provisions made for them. It must be apparent from the instrument itself that she could have changed the beneficiaries without their consent. Mrs. Hawkins surrendered no dominion, and the children acquired neither present interest nor possession.
 

 While a delivery is as necessary to constitute a gift
 
 causa mortis,
 
 as it is in the case of á gift
 
 inter vivos,
 
 we are in the instant case only concerned with the latter class of gifts, because it is conceded that Mrs. Hawkins did not execute this agreement in contemplation of approaching dissolution. The gift, so far as the favored children are concerned, under the terms of this instrument could only take effect at the time of her death. It must therefore be regarded as testamentary in character, in accordance with the well-established rule that, where the owner of property executes to another an instrument under or in connection with which he does not divest himself of the title to property, but provides for its disposition at or before his death, and. it becomes operative to transfer the property only at the time and by reason of his death, such instrument is testamentary in character. It is conceded that this instrument was not executed in accordance with the statute of wills. It has already been seen that, where a gift is attempted to be made direct to the donee without delivery, it is void and of no effect, and it only remains to determine whether vitality can be given to such attempted transfer, where it is made through the medium of a trustee.
 

 
 *171
 
 On principle and without resorting to technicalities and refinements of reasoning, it is difficult to see how a valid gift can be made through the medium of a trustee, when the gift must necessarily fail if made to the donee direct. If complete title passes to the trustee, giving to the trustee certain directions and even discretions as to the time and manner of completing the gift, we would have no quarrel with giving to such transaction the stamp of validity, but we are dealing with a proposition where the transfer to the trustee is limited by a control of the donor and a reservation of the power of alteration and revocation. Except for the fact that certain very respectable authorities give sanction to a gift through the medium of a trustee, where power of revocation is involved, we would have no hesitation in refusing to give it our sanction or to even dignify it by discussion. We do, however, feel impelled to discuss those authorities.
 

 The earliest case we are able to cite supporting this view, and apparently the parent case, is
 
 Stone
 
 v.
 
 Hachett, Exr., 78
 
 Mass. (12 Gray), 227. The syllabus declares:
 

 “A delivery, without consideration, of shares in railroad corporations, with blank assignments indorsed thereon, upon trust to pay the income to the settlor for life, and at his death to transfer the shares to certain charitable objects, (the settlor reserving the right to modify the uses or revoke the trust,) is valid, and will be upheld in equity against the settlor’s widow, claiming the share which the law allows her in property of which he died possessed.”
 

 This declaration of a new doctrine, which has been largely cited and occasionally indorsed is found in a
 
 *172
 
 short opinion without a single citation of authority upon its novel features, and it is not too much to say that not a single authority could have been cited in support at that time. We have no quarrel with that part of the opinion which declares that a voluntary gift of property in trust, when fully completed and executed, will be valid against all persons except creditors; neither do we find any fault with that part which declares that a consideration is unnecessary, and that a conveyance to a trustee which is full and complete will vest in the trustee the legal title to the • property. Our dissent is based upon the proposition that there is not a full and complete transfer where the settlor reserves the right to modify the uses or revoke the trust. It is upon this proposition that the Massachusetts court makes the bold declaration without citation of authority and, as we think, without reason. In the opinion it is stated that there would be grounds for impeaching the validity of the conveyance and withholding the sanction of the court if there were facts showing that the transaction was intended to be testamentary in character and entered into for the purpose of evading the laws of the state relating to last wills and testaments. The entire transaction was such that it was necessarily testamentary in character, and the intention of the donor could therefore make no difference. At page 232 of the opinion we find the following: “It was suggested by the learned counsel for the widow that the donor never parted with his power or dominion over the property, because he retained a right to annul or revoke the trust. But this seems to us quite immaterial. A power of revocation is perfectly consistent with the creation of a valid trust. It does not in any
 
 *173
 
 degree affect the legal title to the property. That passes to the donee and remains vested for the purposes of the trust, notwithstanding the existence of a right to revoke it. ’ ’
 

 We would find no fault with that declaration, except in so far as it operated to effect a devolution of property beyond the life of the donor. Beginning with that case, the Supreme Court of Massachusetts has decided other cases upon that authority, but in not a single instance do we find that that court has attempted to justify its decisions upon logical grounds, but purely upon the authority of the earlier case and treating it as a rule of property.
 

 The case of
 
 Stone
 
 v.
 
 Hackett
 
 has been followed in
 
 Albee
 
 v.
 
 Holmes,
 
 114 Mass., 470;
 
 Kelley, Exr. and Trustee,
 
 v.
 
 Snow,
 
 185 Mass., 288, 70 N. E., 89;
 
 Seaman
 
 v.
 
 Harmon,
 
 192 Mass., 5, 78 N. E., 301;
 
 Pingrey
 
 v.
 
 Natl. Life Ins. Co.,
 
 144 Mass., 374, 11 N. E., 562; and
 
 Kendrick, Admr.,
 
 v.
 
 Ray,
 
 173 Mass., 305, 53 N. E., 823, 73 Am. St. Rep., 289.
 

 There is a wide difference of opinion among the text-writers as to the true interpretation of
 
 McEvoy
 
 v.
 
 Boston Five Cents Sav. Bank,
 
 201 Mass., 50, 87 N. E., 465, but we can read that authority in no other light than as a distinct departure from the earlier cases decided by the same court. We are driven to that interpretation by the fact that in the later case of
 
 Jones, Admr.,
 
 v.
 
 Old Colony Trust Co.,
 
 251 Mass., 309, 146 N. E., 716, the Supreme Court of Massachusetts found it necessary to distinguish it.
 

 The Court of Appeals of New York has in several cases upheld the validity of a trust agreement with a power of revocation, but it will be found that those decisions are based upon a statutory provision quite
 
 *174
 
 similar to the amendment of Section 8617, General Code of Ohio, which will later be referred to. 1 New York Laws of 1896, page 579, Sections 124, 125, 152, 153. The leading case on that subject is
 
 Van Cott
 
 v.
 
 Prentice,
 
 104 N. Y., 49, 10 N. E., 257.
 

 The state of Mississippi may be placed in the same column, it having similarly so decided in
 
 Hiserodt, Admr.,
 
 v.
 
 Hamlett,
 
 74 Miss., 37, 20 So., 143. It is interesting to note that this case was decided upon the authority of the New York cases, and more especially upon the case of
 
 Van Cott
 
 v.
 
 Prentice, supra,
 
 and
 
 Stone
 
 v.
 
 Hackett, supra.
 
 The Mississippi court failed to notice that the New York case was grounded upon the statutory provision. Other cases in New York, all of which are apparently based upon the statute, are
 
 Von Hesse, Admx.,
 
 v.
 
 MacKaye,
 
 136 N. Y., 114, 32 N. E., 615;
 
 Robb
 
 v.
 
 Wash. & Jeff. College,
 
 185 N. Y., 485, 78 N. E., 359.
 

 In
 
 Witherington
 
 v.
 
 Herring,
 
 140 N. C., 495, 53 S. E., 303, 6 Ann. Cas., 188, the Supreme Court of North Carolina followed the cases of
 
 Stone
 
 v.
 
 Hachett
 
 and
 
 Kelley
 
 v.
 
 Snow, supra,
 
 without other citation of authority.
 

 The Pennsylvania courts have followed the same course in
 
 Dickerson’s Appeal,
 
 115 Pa., 198, 8 A., 64, 2 Am. St. Rep., 547, and
 
 Lines
 
 v.
 
 Lines,
 
 142 Pa., 149, 21 A., 809, 24 Am. St. Rep., 487, although in the former case it was held that a gift in trust must be sufficient to pass the title.
 

 The case of
 
 In re Estate of Soulard,
 
 141 Mo., 642, 43 S. W., 617, must be placed in the same class, and yet it would be difficult to sustain that decision upon any logical basis. It first declared that a gift
 
 inter vivos
 
 is not good, even though there is delivery of
 
 *175
 
 legal title, if the enjoyment begins
 
 in futuro.
 
 We know of no other authority which goes to that length. It was nevertheless decided that the trust in that case was a valid one.
 

 Certain California cases have been cited and discussed. Those cases add nothing to the discussion, because they are grounded upon Section 2280 of the California Civil Code, which expressly permits the insertion of the power of revocation.
 

 Many other cases have been cited upon the question of the conveyance of a present interest. In those cases the courts held that the facts showed the transfer of an estate
 
 in praesenti.
 
 In some of those cases we could easily agree. In others we would violently dissent. Regardless of the pronouncements of other courts, it is not possible to construe the agreement of Mrs. Hawkins to convey a present interest to those children who were to receive a part of her property after death. The language is so plain and so free from ambiguity, and the effect is so obvious, that it will not admit of an interpretation which will distort its meaning into a conveyance of a present interest.
 

 On the other hand, counsel for defendant in error have cited numerous authorities where trust agreements have been held testamentary in character and therefore ineffective as a devolution of property after death. It is needless to go farther than a former decision of this court on this subject.
 

 This court in
 
 Worthington, Admr.,
 
 v.
 
 Redkey, Exr.,
 
 86 Ohio St., 128, 99 N. E., 211, laid down some fundamental principles which are clearly applicable to the instant case. Worthington, in contemplation of death, and desiring to make certain charitable
 
 *176
 
 gifts which could not be made by testamentary disposition unless he should survive the period of one year from the date of the testamentary instrument, delivered to Redkey the sum of $6,200, and executed an instrument in writing not in accordance with the law of wills, giving instructions as to how the money should be distributed after his death. The check given by Worthington to Redkey was made payable to “M. Redkey, trustee in trust for Joseph Worthington.” Redkey deposited the money in the bank upon the following terms: “Deposited by M. Red-key, trustee in trust for Joseph Worthington,” and it was so carried on the books of the bank. The trust instrument contained the following reservation:
 

 “In the event of the death of said trustee, I request the probate court to appoint a trustee to serve in his stead and complete the trust as above set forth.
 

 “I reserve the right to revoke this appointment at any time during my life.”
 

 Redkey in fact survived Worthington, and the appointment was not revoked during the life of Worthington. Upon these facts this court held:
 

 “Where property is claimed as a gift by way of a trust which is not testamentary, it devolves upon the donees to prove an express and certain trust for their benefit, either assumed by the donor himself or imposed upon a third person, and in the latter case that the property or the legal title thereto passed beyond the dominion or control of the donor in his lifetime, to the donees or to the person designated as a trustee for them.”
 

 From the opinion in that case we quote the following :
 

 
 *177
 
 “Whether a gift is
 
 inter vivos,
 
 or
 
 causa mortis,
 
 or made through the medium of a trust, it is none the less a gift and subject to the conditions which the law places upon gifts; and whether the gift is made to a third person as agent for the donor or as trustee for the donee,
 
 there must be such a distinct and absolute delivery of the property as to show a relinquishment of all dominion over the property by the donor.”
 

 On the same page of the opinion we find the following :
 

 “ ‘An intention to give, evidenced by a writing may be most satisfactorily established and yet the intended gift may fail because no delivery is proved And where an intention to give absolutely is evidenced by a writing which fails because of its nondelivery, the court will not and cannot give effect to an intended absolute gift by construing it to be a declaration of trust and valid, therefore, without delivery.’
 
 Wadd
 
 v.
 
 Hazelton,
 
 137 N. Y., 215, 219, [33 N. E., 143, 21 L. R. A., 693, 33 Am. St. Rep., 707]. And see generally,
 
 Welch
 
 v.
 
 Henshaw,
 
 170 Mass., 409 [49 N. E., 659, 64 Am. St. Rep., 309];
 
 Smith’s Estate,
 
 144 Pa., 428 [22 A., 916, 27 Am. St. Rep.,
 
 641]; Smith, Admr.,
 
 v.
 
 Ferguson,
 
 90 Ind., 229.
 

 “It must be clear, then, that the writing itself, however definite it may be in its terms, proves no more than an intention on part of the donor to create a trust for the payment of money after his death. If the money has not irrevocably passed out of his control to the donees, or to a trustee for them, then this writing is, at best, no more than an ineffectual testamentary disposition. ’ ’
 

 That case has never been overruled or even criti
 
 *178
 
 cised. Both upon principle and authority we conclude that, where the title does not vest at the time of executing the instrument, by reason of the reserved power of revocation, but, on the contrary, the gift is delayed until the death of the donor, the transaction is testamentary and offends against the laws relating to the execution of wills. If this case therefore were depending upon common-law principles, it would have to be declared that the trust was invalid.
 

 Having reached the conclusion that the trust agreement in the instant case retained such control and dominion of the property and reserved such rights to alter and revoke as to render it invalid at common law to effect a gift either
 
 inter vivos
 
 or
 
 causa mortis
 
 in favor of the beneficiaries named, it remains to determine the effect of Code Section 8617 thereon.
 

 Section 8617, General Code, at the time of the execution of the original agreement provided:
 

 “All deeds of gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making them, shall be void and of no effect.”
 

 An amendment to that section, passed April 29, 1921 (109 Ohio Laws, 215), became effective August 14,1921, whereby the following provision was added:
 

 “But the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend or revoke such trust, and such trust shall be valid as to all persons, except that any beneficial interest reserved to such creator shall be subject to be reached by the creditors of such creator * * *.”
 

 
 *179
 
 The original trust agreement made no attempt to make any disposition of property, or to give any control of it beyond the date of the death of the creator. On the contrary, the agreement specifically states:
 

 “If the trust hereby created shall not be terminated during the lifetime of first party as hereinafter provided, it shall terminate on her death and the trust estate in the hands of second party shall be by it transferred, paid over and distributed to the personal representative of first party.”
 

 It is evident that the supplemental agreement was executed as a result of the amendment to Section 8617, General Code, upon the theory that by virtue of the amendment of that statute the trustee could be given the power to make distribution of property after death in accordance with the expressed wishes of Mrs. Hawkins by virtue of a trust agreement and without conformity with the statute of wills. This claim is very definitely set forth in the brief of counsel for the trust company in the following language:
 

 “We respectfully submit that the language ‘and such trust shall be valid as to all persons’ forever sets at rest any doubt as to the validity of this trust. This amendment is as much a part of the statutory law of the state as the statute of wills and is equally binding upon all persons affected thereby.”
 

 This record therefore clearly presents the question whether by a trust agreement not executed in accordance with the statute of wills the creator of a trust can empower a trustee to make distribution of property, in accordance with the expressed wishes of the creator of a trust, after the death of the creator. A decision of this case requires an interpretation of the Amendment to Section 8617.
 

 
 *180
 
 Section 8617, prior to its amendment in 1921, in terms declared all deeds of gift and conveyances of real or personal property in trust for the use of the creator to be void and of no effect.
 

 The amendment of 1921 followed the decision of
 
 Worthington, Admr.,
 
 v.
 
 Redkey, Exr.,
 
 86 Ohio St., 128, 99 N. E., 211, and it is claimed that the amendment was designed to obviate the force and effect of that decision. If such was the purpose, that purpose was not definitely and clearly expressed, but, if it was not the purpose, then it is difficult to give the amendment any intelligent or practical application. It is a well-settled canon of interpretation of an amendment to a statute that the Legislature will be deemed to have intended some practical change to existing legislation. Prior to the rehearing, a majority of this court had reached the conclusion that the amendment was only declaratory of the common law, and that it was intended to make trusts to the use of the maker valid as to all persons except creditors of the creator. While the language of the amendment is susceptible of such an interpretation, it is also susceptible of the interpretation that it is valid as to the heirs and next of kin, and that it may operate as a devolution of property after death without being executed with the formalities of a last will. It is quite certain that it has been so regarded and trust agreements have been made since that amendment to such an extent as to have become a rule of property. Large estates have been distributed on the faith of their validity and in accordance with the expressed wish of the creators. These distributions should not be disturbed at this time upon a doubtful interpretation of ambiguous legisla
 
 *181
 
 tion. After all, it is a matter which is within the power of the General Assembly, and, if it becomes unsatisfactory in operation, the Legislature can surround it with appropriate safeguards. It is in the power of the Legislature to amend or even repeal the statute of wills. It may provide for the private settlement of estates and without probate or other public administration.
 

 Upon the authority of the amendment to Section 8617, the judgments of the lower courts will be reversed.
 

 Judgment reversed.
 

 Robinson, Matthias and Allen, JJ., concur.
 

 Uinkade, Jones and Day, JJ., concur in proposition 3 of the syllabus and in the judgment.