Matthias, J.,
 

 dissenting. In my opinion, the pronouncements of this court in the cases of
 
 Union Trust Co.
 
 v.
 
 Hawkins, Admr.,
 
 121 Ohio St., 159, 167 N. E., 389, 73 A. L. R., 190, and
 
 Cleveland Trust Co., Trustee,
 
 v.
 
 White,
 
 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475, are still the law in this state and particularly so in view of the provisions of Section 8617, General Code, as amended effective August 15, 1921.
 

 While these principles are well established, the validity of each revocable trust instrument depends on language used in the instrument and the circumstances surrounding the creation of the trust.
 

 ' Pacts differing from those involved in the above cases were presented in the case of
 
 Bolles
 
 v.
 
 Toledo Trust Co., Exr.,
 
 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R., 1164. In that case the decedent, George A. Bolles, executed his last will and testament
 
 *443
 
 on the 26th day of January, 1928, and on the same day made and executed a trust agreement designated trust No. 331. Another trust, designated trust No. 520, was made January 21, 1930, and a third trust, No. 328, not under attack in that case, was made January 8, 1928. The beneficiary of trust No. 328 was the donor’s daughter, Barbara Ruth Bolles, a minor. The donor was beneficiary therein only in case the child predeceased bim without issue, or died before reaching the age prescribed for distribution.
 

 In trust No. 331, the donor was named as beneficiary during his lifetime, and entitled to the net income. Upon death of donor and his wife, who was second beneficiary to the extent of $500 per month, the undistributed balance was to go to trust No. 328.
 

 Likewise, in trust No. 520 the donor was named as a beneficiary as long as he lived, as to income and principal, and after his death the trust
 
 res
 
 was to be transferred to trust No. 331.
 

 Both trusts No. 331 and No. 520 were revocable and trust No. 328 was irrevocable. The last will and testament of George A. Bolles contained the following provision :
 

 “Item III. All the rest, residue and remainder of my property, both real and personal I do hereby give, devise and bequeath to The Toledo Trust Company, of Toledo, Lucas county, Ohio, and its successors, to be managed and disposed of in accordance with the terms and provisions of a certain trust agreement bearing the date of January 26th, 1928, and known as trust No. 331, wherein The Toledo Trust Company is trustee of certain trust property; and my executor, upon delivery of the property of my estate to said trustee, shall not be obliged or permitted to see to the application and disposal by said trustee of said property, nor be permitted to inquire into the performance of the trust under said trust agreement. * * *”
 

 
 *444
 
 It is thus clearly disclosed that the entire plan, adopted and carried into execution by Bolles, was testamentary in character, and that was the holding of this court in that case.
 

 The controlling facts in the instant case are as follows :
 

 On the 12th day of May, 1939, Stanley W. Harris entered into a trust agreement with D. W. Maxon of Akron, whereby a trust
 
 res
 
 of 100 shares of the stock of The McNeil Machine & Engineering Company was deposited. The trustee had power thereunder to enter into an agreement of trust with four other persons^ who together with Maxon were the sole owners of the stock in the company, and to surrender the stock in the company under a proposed agreement of trust; had power to vote the stock in accordance with the agreement of trust, to receive and remit dividends to the donor and to call upon the donor for contributions if required; and had power, in such capacity, to exercise any rights under the agreement of trust in accordance with his best judgment.
 

 The right of revocation was reserved in this agreement and the beneficiary after the death of the donor was Mary Dailey, to the extent of $100 per month, and after her death, the beneficiaries were the children of donor’s brother.
 

 On the 15th day of May, 1939, the proposed agreement of trust was made with four other stockholders whereby the four other stockholders agreed to insure their lives in a certain sum so that upon the death of any one of them, the others could purchase the stock at an agreed value of $400 per share.
 

 During the lifetime of the parties, however, these new trustees were authorized to vote the stock and receive the dividends as they were declared, in accord-, anee with the number of shares put into the trust by each.
 

 
 *445
 
 On March 4,1940, Stanley W. Harris executed a will in which another trust agreement was created, by a gift of the residue of his estate to Dudley W. Maxon, trustee, to pay out of the net income thereof to Harris ’ wife a sum not exceeding $5,000 annually until her death; the remaining estate to be then paid to Alice Harris, his niece, and Stanley B. Harris, his nephew.
 

 The trust instrument, dated May 12, 1939, was not incorporated in the will or referred to therein.
 

 The widow in the instant case has elected to take under the law, and the only question presented is whether the
 
 res
 
 of the trust, dated May 12, 1939, is part of the net estate, and whether the widow shares therein under Section 10504-55, General Code.
 

 The decision of the instant case, therefore, must turn on whether the agreement created an agency. If it constituted a trust, it is valid and the
 
 res
 
 is not a part of the net estate; if an agency, the
 
 res
 
 did become a part of the net estate.
 

 It is stated in the majority opinion: “The plaintiff surviving spouse instituted this action for the purpose of having this trust
 
 inter vivos
 
 declared void as to the attempted disposition of the corpus after her husband’s death; and she asks that this property be administered as a part of her husband’s estate.”
 

 In the majority opinion,, the finding of invalidity is based on the following facts of dominion by the decedent :
 

 Reserved right to revoke or modify; reserved income ; reserved right to deliver additional securities to the trustee; reserved right to redelivery of certain trust property; the agreement did not authorize the trustee to sell the trust property; the agreement did not authorize reinvestment; the agreement conferred no authority to vote the stock in the trust; the agreement provided for transfer to other trustees; when stock was transferred by agreement of May 15, 1939,
 
 *446
 
 there was no further right to’vote in the capacity of trustee; the donor continued to serve as president at a salary of $20,000 per year; the donor made the same use of the property as he did previous to execution of the agreement; the trustee attended no meetings of stockholders or of the board of directors and did not examine the books of the corporation; and the wife of Harris did not know of either of the trust agreements.
 

 Applying Section 8617, General Code, which is the first criterion to be applied in determining the validity of a trust, we are of the opinion that the enumerated powers retained by the donor are not of such a nature that he could not lawfully grant them to another. Under the provisions of Section 8617, General Code, “the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend or revoke such trust, and such trust shall be valid as to all persons, except * * * creditors of such creator
 
 '*
 
 *
 

 In this case the rights of revocation or modification were never exercised and the plan adopted and carried into execution by Harris was not testamentary in. character.
 

 Hart, J., concurs in the foregoing dissenting opinion.