MORRISON, APPELLEE, *v.* MORRISON ET AL., APPELLANTS.

(No. 4830—Decided February 7, 1955.)

*Messrs. Shumaker, Loop & Kendrick,* for appellee.
*Messrs. Ohlinger, Koles, Wolf & Flues,* for appellants.

CONN, J. An appeal to this court has been taken by Clyde W. Morrison, Alston E. Morrison and Osmond B. Morrison (referred to herein as defendants) on questions of law from a judgment entered in an action brought by plaintiff, Dessie Morrison, in the Probate Court of Lucas County, Ohio, against these defendants and others, praying for a declaratory judgment.

The issues in the trial court, raised on the pleadings, evidence and stipulations, embrace principally the construction and true meaning of the written declaration of trust executed by Frank B. Morrison on August 31, 1943. The material facts are not disputed and are largely matters of record.

The subject matter of the trust consists of 100 shares of stock of The Metal Electric Processing Company, an Ohio corporation. The declaration of trust recites that Frank B. Morrison is the owner of the 100 shares, represented by certificate No. 49; that his son Clyde W. Morrison has worked diligently with his father in the management and operation of the corporation and owns 100 shares of stock in the corporation: that the 200 shares together constitute a major and controlling interest in the corporation; and that it was desired that such control at all times be vested in him or his said son or both.

Following the above recitals, the declaration provided that

the 100 shares are held by the settlor for the following trusts and uses, to wit:

"(a) During my lifetime to vote said shares at all meetings of the stockholders of said corporation;

"(b) During my lifetime to receive all dividends, income and profits, paid or accruing upon said stock.

"At my death the said one hundred (100) shares of stock shall be divided as follows: eighty (80%) percent or eighty (80) shares shall be the sole property of my said son, Clyde W. Morrison, and ten (10%) percent or ten (10) shares shall be the sole property of my son Alston E. Morrison, and the remaining ten (10%) percent or ten (10) shares shall be the sole property of my son, Osmond B. Morrison, and my executor, administrator and personal representatives shall do everything necessary to vest the full legal title in and to said shares of stock to my three (3) sons, the same to become their sole and absolute property * * *."

The declaration of trust also contained a provision giving Clyde W. Morrison an option to purchase the 20 shares of Alston E. Morrison and Osmond B. Morrison upon terms and conditions therein set forth, and that such shares "will become the sole and absolute property of Clyde W. Morrison."

It is alleged in the amended petition of plaintiff that since February 7, 1950, it came to the knowledge of plaintiff for the first time that her husband, from January 2, 1942, until his death, had held title to and had the possession of the 100 shares of stock; that the shares came into the possession of Clyde W. Morrison in his capacity as executor of the will of the decedent; and that without the approval of this court and without the knowledge or acquiescence of plaintiff, a purported assignment was endorsed on the stock certificate, purporting to be executed by the executor of the estate.

Plaintiff avers further that the shares of stock are in fact assets of the estate; that plaintiff is entitled to her distributive share therein; that the declaration of trust was in fact testamentary and was revoked by the subsequent will of decedent; that the execution of the declaration of trust was a mere device and subterfuge to deprive plaintiff of her distributive share in the stock; that plaintiff was informed and advised by the

executor and his attorney that at the time plaintiff signed her purported election to take under the will, decedent in his lifetime had transferred the stock; and that plaintiff, relying on such information and advice, filed no exceptions to the inventory and had signed the purported election to take under the will of decedent.

In the joint answer of defendants, they specifically denied that Frank B. Morrison had held the title to and possession of the stock in his individual capacity; and averred that decedent was a trustee of the stock under a written, irrevocable declaration of trust; that the defendants were the beneficial owners thereof in the proportions set forth in the declaration; that prior to February 7, 1950, the terms of the trust were fully disclosed to plaintiff; that plaintiff had full knowledge of the trust when she elected to take under the will of decedent; that the time for election expired on July 31, 1950; and that plaintiff is now conclusively bound under her election to take under the will. The answer contains further a general denial. The affirmative allegations in the answer of defendants are denied in plaintiff's reply.

Plaintiff prays that the 100 shares of stock be found and decreed to be assets of the estate; that no valid and enforcible trust of the stock was established by decedent in his lifetime; that the value thereof should be considered in computing plaintiff's rights under the will; that plaintiff would have been entitled to a distributive share of the stock had she not elected to take under the will; and that plaintiff is entitled to the option to withdraw and revoke her election to take under the will of decedent.

At the opening of the trial, the parties stipulated as to certain facts, to wit, that Frank B. Morrison died testate on October 20, 1949, leaving plaintiff as surviving spouse and three adult sons, the defendants herein, as his heirs at law; that his will was dated October 20, 1947, and a codicil thereto, June 17, 1949; that Clyde W. Morrison, as executor, filed an inventory of the assets of the estate; that no shares of stock of the company were listed therein; that no exceptions were filed thereto; that plaintiff signed a paper electing to take under the will of decedent on February 7, 1950; that Clyde W. Morri-

son is and has been president of such corporation since its organization; and that Frank B. Morrison, the decedent, was vice-president and treasurer thereof from 1936 to the time of his death.

It was stipulated further that Nellie May Morrison (former wife of Frank B. Morrison) died in the year 1940; that on July 2, 1942, Frank B. Morrison married plaintiff and he and plaintiff lived together as husband and wife until his death; and that Frank B. Morrison received from the company compensation of $1,750 per month for the year 1948, and until May 1949, and lesser amounts until his death in October of that year.

In view of the admissions in the pleadings and the stipulations of the parties, the material issue centers on the purpose and intention of Frank B. Morrison in executing the declaration of trust, and its true construction in relation to the legal rights of plaintiff.

The trial court found for the plaintiff on the issues joined and held that the declaration of trust was null and void with respect to plaintiff and a fraud upon her rights; that it was the intention of Frank B. Morrison that the ownership, possession and control of the stock should pass to defendants upon his death, he having retained possession, custody and control of the certificate and shares of stock, with power to transfer and dispose of it, and use or consume the proceeds thereof; that the stock was an asset of decedent's estate; that on the date the plaintiff consulted the court with respect to her election, the court had not been and was not fully informed concerning the facts and circumstances with respect to the alleged declaration of trust and could not and did not explain to plaintiff her rights under the will: that had the court known these facts and circumstances, it would have explained to plaintiff the advantages of taking under the law; and that the election to take under the will was revoked and set aside, and plaintiff was given the option to take under the law or the will, not later than 30 days after the amended inventory and appraisal has been approved. Judgment was entered for plaintiff, from which defendants have appealed.

The defendants assign as errors of the trial court its finding and judgment that the declaration of trust is null and void

and a fraud upon plaintiff's rights; that the 100 shares of stock are assets of the estate; and that the court erred in revoking the election of plaintiff to take under the will.

We will consider first the alleged errors of the trial court in setting aside the declaration of trust. Plaintiff claims that pursuant to the terms of the trust the settlor did not transfer the title to the stock or deliver the physical possession of the certificate of stock for the 100 shares and, until his death, retained the possession and control thereof, with power to dispose of the stock. If this contention were supported by the record in this case, the right of plaintiff to a distributive share in the stock would not be affected. Moreover, the declaration of trust would be testamentary in character and, for this reason also, invalid.

Before making a survey of the evidence, we call attention to the rule that an owner of personal property may declare a present trust therein and, thereupon, hold the naked, legal title for specific purposes. Upon such declaration being made, the beneficial interest is separate from the legal title to the same extent as if the transfer had been made to a neutral trustee. The declaration of trust may be either written or oral, the only difference being in the manner and degree of proof. 40 Ohio Jurisprudence, 167, Section 34; 182, Section 40.

Plaintiff was not called as a witness. The record discloses no explanation of plaintiff's failure to testify. Under these circumstances, an inference arises that if plaintiff had been called, her testimony would not have been wholly favorable in support of her claim.

The evidence is almost wholly free from conflict. The evidence shows that prior to November 9, 1936, all the authorized stock of the company, in the amount of 250 shares, was held by Clyde W. Morrison and his wife, Sarah E. Morrison; that on said date 26 shares of stock were transferred from Clyde W. Morrison to F. B. Morrison and 74 shares thereof were transferred from Clyde W. Morrison and Sarah B. Morrison to Nellie May Morrison, and certificates were issued accordingly; that Nellie May Morrison was the wife of Frank B. Morrison and the mother of Clyde W., Alston E., and Osmond B. Morrison, the defendants herein; that on May 6, 1940, Nellie May Morri-

son transferred her certificate of stock to "F. B. Morrison, Trustee," by endorsement thereon, and on the same day a new certificate of stock was issued to "F. B. Morrison" for the 74 shares; that on January 2, 1942, the certificates for 26 shares and 74 shares were surrendered and were reissued as one certificate for 100 shares to "Frank B. Morrison, Trustee"; and it appears that such transfer was confirmed by an appropriate entry on the stockholders' ledger.

The evidence tends to show that the designation "Trustee" may not have appeared on the certificates at the time of the reissuance of the stock, but was inserted later. In our opinion, this irregularity, if any, would not be material if upon the record it clearly appears that a trust in the 100 shares was irrevocably established.

It appears further from the evidence that the original shares of stock which had been issued to Frank B. Morrison and Nellie May Morrison in the aggregate amount of 100 shares were purchased with funds that came to Nellie May Morrison as an inheritance from her family; that, as a part of this transaction, the members of the family, during the lifetime of Nellie May Morrison, had several conferences relative to the investment in and purchase of this stock; that, as a result of such conferences, a family arrangement and understanding was had that the 100 shares of stock should be held by the father, Frank B. Morrison, in trust for the three sons, the defendants herein; and that this oral understanding among the members of the family constituted an oral trust which was consummated prior to the marriage of plaintiff and Frank B. Morrison.

The trial court erroneously sustained an objection to certain evidence offered in support of the oral trust. This evidence was competent as bearing on the intention of Frank B. Morrison at the time he executed the declaration of trust, and as an aid in the construction of that document. On the undisputed evidence, what the settlor intended to accomplish when he reduced his declaration to writing becomes crystal clear in the light of the oral understanding relative to the ownership of the 100 shares of stock.

On this point, we refer particularly to the testimony of counsel for Frank B. Morrison. He testified in effect that

early in the year 1943, Mr. Morrison consulted him relative to the oral arrangement the family had as to the 100 shares of stock which he held in trust in certain proportions for his three sons. He was advised by counsel to put the oral agreement in writing. Thereupon, the written declaration of trust before us on this appeal was prepared in terms irrevocable, which counsel brought to the attention of his client who executed it in duplicate. One copy was placed in an envelope, properly endorsed, and given to counsel for safe-keeping. The other was turned over to Clyde W. Morrison and placed in his exclusive possession. The certificate of stock for the 100 shares was placed in the safe of the company, to which the officers of the corporation had access, including the president, Clyde W. Morrison. The certificate remained in the company's safe until after the settlor's death.

Upon the issuance of this stock to Frank B. Morrison, the trustee, in consummation of the oral agreement, it became both his legal and moral duty to carry into effect the trust agreement and to protect the equitable interests of the defendants in the 100 shares of stock. That duty arose on the basis of the oral trust, and the defendants had the legal right to have that duty observed and their rights safeguarded. The fact that the written declaration of trust, in conformity with the oral agreement, was executed subsequently to the marriage of plaintiff provides no basis for the claim of plaintiff that the written declaration was a device or subterfuge designed to deprive plaintiff of her right to a distributive share in the stock.

Under the terms of the trust, a present, proportionate, equitable interest passed to the defendants. The reservation of voting rights in favor of the trustee and his right to receive dividends on the stock during his lifetime, under the irrevocable terms of the trust, were consistent with the equitable title of the defendants and the validity of the declaration of trust.

In the light of the undisputed fact situation presented, we approach the law and will comment briefly thereon.

In the first place, it is well settled that an owner of personal property may declare that he holds such property in trust for another, and such declaration may be oral or in writing. 40 Ohio Jurisprudence, 141, Section 16, citing *Bruer* v. *John-*

*son,* 64 Ohio St., 7, 59 N. E., 741; *Jones* v. *Luplow,* 13 Ohio App., 428. See, also, *Mark* v. *Mark,* 145 Ohio St., 301, 61 N. E. (2d), 595, 160 A. L. R., 608; *Neville* v. *Sawicki,* 146 Ohio St., 539, 67 N. E. (2d), 323.

Furthermore, the declaration of trust in the instant case is not testamentary in character. The evidence is clear and convincing that the trust was irrevocable, and that under its terms a present, equitable interest passed to the three sons, the defendants herein.

40 Ohio Jurisprudence, 154, Section 24; 176, Section 37; *Central Trust Co.* v. *Watt,* 139 Ohio St., 50, 38 N. E. (2d), 185; *Union Trust Co.* v. *Hawkins, Admr.,* 121 Ohio St., 159, 167 N. E., 389, 73 A. L. R., 190.

On the issue of the validity of the trust, both parties have cited the well-known case of *Bolles* v. *Toledo Trust Co., Exr.* 144 Ohio St., 195, 58 N. E. (2d), 381. The instant case is distinguishable on the facts from the *Bolles case.*

It is conceded that the trust in the *Bolles case* was revocable. The court held that while a husband may dispose of his personal property during his lifetime without the consent of his wife, he may not defeat her right to a distributive share in property which he owns and "of which he retains the right of disposition and control up to the time of his death."

In the *Bolles case,* the court referred to the living trust as "revocable and amendable" and a trust wherein the settlor had reserved the right to amend or revoke the trust. As suggested above, it appears that the instant case is distinguishable, since the evidence discloses an irrevocable trust and one which created in favor of the settlor's three sons a present, equitable interest in the 100 shares of stock.

The *Bolles case* was followed in *Harris* v. *Harris, a Minor,* 147 Ohio St., 437, 72 N. E. (2d), 378, where the court again had before it an amendable and revocable living trust, with a reservation of the income of the property to the settlor and where the settlor retained dominion and control over the trust property. It was held that the widow could assert her right to a distributive share in the trust estate.

However, plaintiff contends that the irrevocable character of the present trust is as to form only and not as to the sub-

stance. With this claim we are not in accord, as the evidence in the case before us is clear that the settlor did not reserve the right of "disposition and control" of the property which he held in trust.

It appears to be unnecessary to cite additional authorities. The equitable interest of the defendants in the property held in trust is clearly established, and, under the authorities cited, the trust is valid. It is our opinion that the judgment of the trial court setting aside the trust agreement and rendering it null and void, whereby plaintiff became entitled to a distributive share in the stock, is erroneous and contrary to law.

It should be noted that plaintiff was informed before her husband's death that the 100 shares of stock were held in trust for the defendants. It also appears that counsel for the estate, at a meeting of interested parties, including plaintiff, following the death of plaintiff's husband, read the will and the declaration of trust, and at that meeting counsel explained to plaintiff that the 100 shares of stock were not a part of the estate and would not be included in the inventory. Later, plaintiff was furnished with a copy of the declaration of trust, prior to the time she appeared in the Probate Court, for the purpose of making her election to take or not to take under the will.

Plaintiff's election to take under the will was revoked and set aside by the trial court, and plaintiff was given an option to take either under the law or under the will, not later than 30 days after the approval of the amended inventory and appraisement.

Under Section 2107.43, Revised Code, the surviving spouse may appear in person before the probate judge or a deputy clerk who has been appointed to act as referee and make her election whether or not a citation is issued. This section provides further that when the election is made in person, the judge or referee shall explain the will, the rights under the will, and her rights under the law, in the event of a refusal to take under the will.

No evidence was introduced on the issue of revocation. No inference arises on the record that the election of the surviving spouse was had contrary to law. He who affirms must prove, and no evidence having been introduced in support of the find-

212

ing and judgment of the trial court revoking such election, there is a failure of proof, and the judgment of revocation entered by the trial court is erroneous and prejudicial to defendants.

Without further extending this opinion, we conclude that the judgment of the Probate Court is contrary to law and should be reversed, and final judgment entered for defendants. The cause is remanded to the Probate Court for further proceedings.

*Judgment reversed.*

FESS, P. J., and DEEDS, J., concur.