THE FIRST NATIONAL BANK OF CINCINNATI, EXR., ET AL., APPELLEES, v. TENNEY ET AL., APPELLEES; SIMRALL ET AL., APPELLANTS.*

(No. 8013—Decided July 5, 1955.)

*Messrs. Cottle, Campbell & Druffel* and *Mr. William H. Kite,* for plaintiff appellees.

*Mr. Sanford Headley* and *Mr. Walter K. Sibbald,* for defendant appellees.

*Messrs. Pogue, Helmholz, Culbertson & French, Messrs. Kirk & Pinkerton* and *Mr. John C. McCarthy,* for appellants.

MATTHEWS, J.   The First National Bank of Cincinnati is executor of the last will and testament of Mary E. Monfort, also trustee under a trust agreement executed and delivered by Mary E. Monfort in her lifetime, and executor of the last will and testament of Adelaide Monfort Iredell.   In those three capacities it instituted an action in the Probate Court of Hamilton County to secure instruction as to who was entitled to certain property, which it was holding in the capacity of executor or trustee, and for direction as to its duty in that regard.   Whether The First National Bank was holding certain property in the

---

*Judgment affirmed, 165 Ohio St., 513.

one capacity or the other depended on a determination of the validity or invalidity of a certain trust agreement executed and delivered by Mary E. Monfort in her lifetime. The Probate Court sustained the validity of the trust agreement as an *inter vivos* conveyance of title and directed distribution according to those claiming under Adelaide M. Iredell, deceased, who was named the beneficiary in remainder therein, subject to rights and powers of Mary E. Monfort in her lifetime. This appeal from that judgment is by the heirs and next of kin of Mary E. Monfort, who would be entitled to the distribution in the event of the invalidity of the trust agreement as an *inter vivos* conveyance.

The record shows that on February 7, 1947, Mary E. Monfort entered into a certain trust agreement with The First National Bank and, in accordance with its terms, transferred and delivered to it certain property consisting of stocks and bonds, the title to which it accepted and agreed to hold in accordance with the terms of the trust agreement. On two subsequent occasions, other stocks were transferred and delivered to it in accordance with the provisions of the trust agreement, which stocks became subject to its terms. In addition to transferring the title to the property, the trust agreement gave The First National Bank the power:

"To invest and reinvest and keep the trust estate invested in any kind of property, real or personal, as the trustee may in its uncontrolled discretion deem proper for the investment of the funds held by it hereunder, without regard to the proportion any such investment or investments of a similar nature may bear to the total trust estate and without being limited to the classes of investments in which trustees are or may be authorized by statute or case or rule of court to invest trust funds, intending hereby to authorize the trustee to act in such manner as it shall believe to be for the best interest of the trust estate, regarding it as a whole, even though particular investments otherwise might not be proper;

"To sell, transfer and convey, for cash or on time, at public or private sale upon such terms and conditions as to it shall seem best, any property, real or personal, at any time included in the trust estate, and the purchasers shall not be required to

see to the application of the purchase money; the trustee shall not be required to set aside any sinking fund to absorb losses incurred upon sales or premiums paid upon purchases, or for any other purposes * * *.''

Many other powers were conferred, so that as to persons dealing with it, in good faith, it had most, if not all, the powers of an absolute owner.

As to the beneficial title, it was provided that all the net income should be paid quarterly to Mary E. Monfort during her lifetime, and power also was given the trustee to expend for her benefit from the corpus of the trust. It was further provided that ''upon the death of the trustor all of the assets then on hand in the trust estate together with any accumulated income, after the payment of the trustee's charges and any obligations of the trustee growing out of any of the terms of this instrument, shall be paid over and distributed to trustor's sister, Adelaide M. Iredell.''

It was provided also that Mary E. Monfort should have the power during her lifetime to ''amend, alter, revoke or terminate this agreement in whole or in part, by an instrument in writing delivered to the trustee thirty (30) days in advance of the proposed amendment, alteration, revocation or termination.''

Adelaide M. Iredell died on January 22, 1952, and Mary E. Monfort died on October 6 of the same year. Neither left issue surviving. Adelaide M. Iredell died testate and by her will named Virginia Tenney as her sole residuary legatee, and, as such, the Probate Court held she was entitled to all the property which The First National Bank was holding as trustee under the trust agreement. The reason for the court so holding was that upon delivery of the property by Mary E. Monfort to The First National Bank, a vested equitable interest was transferred to Adelaide M. Iredell, subject to be divested by the happening of a condition subsequent, to wit, revocation by Mary E. Monfort in her lifetime; that this conditional equitable estate was vested in Adelaide M. Iredell at the time of her death and devolved upon the beneficiary named in her will; and that, as the time for the happening of the condition had expired and it had not happened, what was a conditional vested estate had become absolute in such beneficiary.

This appeal is prosecuted by the next of kin of Mary E. Monfort, who would be entitled to the distribution should it be determined that the provision in favor of Adelaide M. Iredell was ineffective to vest in her any title.

We think the Probate Court reached the correct conclusion.

Because Adelaide M. Iredell gave no consideration for the benefit bestowed upon her by this trust agreement, it is urged that the transaction must be governed by the law relating to gifts, and various cases relating thereto have been cited and commented upon. It is true that the provision for Adelaide M. Iredell in this agreement was a gratuity, but Mary E. Monfort chose to bestow her bounty in the form of a trust and not in the form of a gift. That was her right, and presumably she chose that method because her purpose could be carried out in the one way and not in the other.

For those reasons, we are of the opinion that the cases dealing with the law of gifts in any situation are entirely irrelevant.

The provision in this trust agreement which it is claimed invalidates it is the one that gave to Mary E. Monfort the power of revocation in her lifetime. It should be observed that this power of revocation could have no effect upon the acts of the trustee in dealing with the legal title before the revocation. There was no power reserved to nullify the acts of the trustee in the exercise of the power conferred upon it. The power of revocation operated only as a condition subsequent to the title of whatever property constituted the corpus and accumulated income at the time of the revocation.

However the law may be on this subject in the absence of a statute, we find it fully covered in this state by Section 1335.01, Revised Code, by which it was enacted that:

"All deeds of gifts and conveyances of real or personal property made in trust for the exclusive use of the person making the same are void, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend, or revoke such trust, and such trust is valid as to all persons, except that any beneficial interest reserved to such creator may be reached by the creditors of such creator, and except that

where the creator of such trust reserves to himself for his own benefit a power of revocation, a court, at the suit of any creditor of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same.''

The construction of Section 8617, General Code (now Section 1335.01, Revised Code), was presented in *Union Trust Co.* v. *Hawkins, Admr.*, 121 Ohio St., 159, 167 N. E., 389, 73 A. L. R., 190, involving a trust agreement containing most, if not all, the provisions of the trust agreement presented in this case, including the power of revocation during the lifetime of the creator of the trust. Its validity was assailed on the ground that the power of revocation made the instrument testamentary in character and that, as it had not been executed with the formalities of a will, it was void. The court rejected this contention holding that the vesting of the title was not postponed until after death, that it vested at once subject to being divested by the happening of a condition subsequent, to wit, revocation by the creator of the trust in his lifetime.

In the third paragraph of the syllabus the court said:

''The amendment of Section 8617, General Code, effective August 14, 1921, authorizes a trust agreement, including the power to alter, amend or revoke the trust, and by virtue of that amendment a trust agreement making a transfer or conveyance of property including such power and to take effect at the death of the creator of the trust, will effect such transfer and conveyance, although the instrument be not executed in conformity with the law of wills.''

*Union Trust Co.* v. *Hawkins, supra,* has been followed in many Ohio cases, and we are not aware of any adverse criticism of it in any Ohio case or elsewhere. The statute and that case are dispositive of that phase of this case.

Finally, it is urged that Mary E. Monfort lacked the mental capacity to create this trust. It is urged that she was of unsound mind, and much evidence was introduced on this subject. A consideration of the evidence has led us to the conclusion that the trial court was amply justified in finding that she was mentally competent and this court would not be justified in disturbing its conclusion.

We find no error prejudicial to the appellants in the record. For those reasons, the judgment is affirmed.

*Judgment affirmed.*

Ross, P. J., concurs.