Bell, J.
The sole question raised by this appeal emanates from the holdings of the Probate Court and the Court of Appeals that, upon delivery of the property by Mary E. Monfort to the First National Bank, a vested equitable interest was transferred to Adelaide M. Iredell, subject to be divested by the happening of a condition subsequent, to wit, revocation by Mary E. Monfort in her lifetime; and that since the time for the happening of the condition had expired, and it had not happened, the estate which had vested in Adelaide M. Iredell, subject to be divested, had become absolute in the beneficiary named in her will.
It is conceded by appellants herein that the trust created on February 7, 1947, by Mary E. Monfort was a valid trust. This concession is a recognition that the much criticized rule of Worthington, Admr., v. Redkey, Exr., 86 Ohio St., 128, 99 N. E., 211, has been properly, albeit not too peacefully, laid to rest in Ohio. Although it is unfortunate that, in bringing the law of Ohio into line with that of all the other states, reliance was placed on the supposed effect of an amendment to the statute of frauds rather than upon the sounder reasoning of Stone v. Hackett, Exr., 78 Mass., 227, the interment is nonetheless complete. Union Trust Co. v. Hawkins, Admr., 121 Ohio St., 159, 167 N. E., 389, 73 A. L. R., 190; Cleveland Trust Co., Trustee, v. White, 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475; Schofield, Trustee, v. Cleveland Trust Co., 135 Ohio St., 328, 21 N. E. (2d), 119; Central Trust Co. v. Watt, 139 Ohio St., 50, 38 N. E. (2d), 185; Bolles v. Toledo Trust Co., Exr., 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R., 1164.
But appellants contend that since the named remainderman was not living at the time of the death of the life beneficiary a resulting trust arose in favor of the heirs of the trustor.
A resulting trust has been defined as “one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title. ’ ’ 40 Ohio Jurisprudence, 240, Section 76. The device has historically been applied to three situations: (1) Purchase-money trusts; (2) instances where an express trust does not exhaust the res given to the *516 trustee; and (3) express trusts which fail, in whole or in part. 2A Bogert on Trusts, 405, Section 451.
Obviously, the first of these has no application here. The second is applied where a trustor vests in a trustee or cestui qui trust a larger interest than the purposes of the trust require. Broadrup v. Woodman, 27 Ohio St., 553. The most frequent application is in those cases where contributions are made by several persons to a common unexhausted fund, which, in the absence of the possibility of the application of the cy pres doctrine, results in a holding of such fund in trust for the donors. See Boenhardt v. Loch, 198 N. Y., 631, 92 N. E., 1078; Walters v. Pittsburgh & Lake Angeline Iron Co., 201 Mich., 379, 167 N. W., 834, 1 A. L. R., 624; Coe v. Washington Mills, 149 Mass., 543, 21 N. E., 966, 74 A. L. R., 671. All parties concede that the trust was valid so there could be no resulting trust as a result of a failure of the trust.
But we are still confronted with a determination of the rights of the parties hereto in the light of events subsequent to the creation of the trust. Is the power of revocation reserved by the trustor to be treated as a limitation on the gift of the remainder or is it a condition subsequent? Or, in other words, did the remainderman take a contingent remainder, conditioned upon her survival as to the life beneficiary and upon the non-revocation of the trust, or did she take a vested remainder subject to be divested by revocation?
A great deal of difficulty has beset courts and lawyers in interpreting this generally accepted terminology of ‘ ‘ contingent remainders” and “vested remainders subject to be divested” or “vested defeasible remainders.” A long step has been taken in Restatement of the Law of Property, Section 157, in reducing this confusion. The term, “contingent remainder,” has been abandoned in the Restatement in favor of the term, “remainder subject to á condition precedent.” Such change makes less likely confusion between an interest subject to a condition precedent and a vested defeasible interest subject to a condition subsequent. It serves also to point up the outstanding characteristic of the interest, namely, the existence of a condition precedent which must be fulfilled before anyone can enjoy the *517 full benefits of the interest. Moreover, by eliminating the term, “contingent,” as contrasted with “vested,” we are able to call attention to the variety of interests which fall within the term, “vested.”
Simes and Smith, in The Law of Future Interests (2 Ed.), Section 113, say:
“It is thus possible to indicate a number of typical situations which may create remainders subject to complete defeasance. * * * Fifth, any remainder which, by the exercise of some power is subject to being defeated. This would include a power of appointment, or a power given to a trustee to invade the corpus of the trust for the benefit of some person or persons.” We think they might well have added “or a power of revocation reserved to the trustor. ’ ’
A.nd one of the examples of such a defeasible remainder is given by Simes and Smith as follows:
“If land be conveyed to T, trustee, for the benefit of A for life, and then for the benefit of B and his heirs, provided that T may expend all of the corpus of the estate for the benefit of A, the remainder of B is vested subject to complete defeasance.” Applying the facts of this case to the above example, it would read:
“If property be conveyed to T, trustee, for the benefit of A for life, and then for the benefit of B, provided that A reserves the power to revoke the trust at any time during her lifetime, the remainder of B is vested subject to complete defeasance by A exercising the right of revocation. ’ ’
Such a result appears to this court to be sound. The law favors the vesting of estates at the earliest possible moment, and it is well settled in Ohio that a testamentary remainder after a life estate vests in the remainderman at the death of the testator unless the intention to postpone the vesting to some future time is clearly expressed. Bolton v. Bank, 50 Ohio St., 290, 33 N. E., 1115; Tax Commission v. Oswald, Exrx., 109 Ohio St., 36, 141 N. E., 678; Ohio Natl. Bankc of Columbus, Trustee, v. Boone, 139 Ohio St., 361, 40 N. E. (2d), 149, 144 A. L. R., 1150. And even though such words as “when” and “after” are used in bestowing a remainder after a life estate, as Judge Zimmer *518 man said in the Boone case, at page 366, sneh words are “generally considered to relate to the enjoyment of the estate rather than to the time of its vesting in interest.”
The distinction between a remainder such as the one involved here and one created by will is obvious. A will speaks from the date of death of the testator. Judy v. Trollinger, 110 Ohio St., 576, 583, 144 N. E., 44, 46. But a trust speaks from the date of its creation. Trowbridge v. First-Stamford Natl. Bank & Trust Co., 182 Misc., 180, 44 N. Y. Supp. (2d), 43, affirmed, 294 N. Y., 785, 62 N. E. (2d), 232.
From the very nature of an inter vivos trust it must so speak. In order for a trust to be a trust, the legal title of the res must immediately pass to the trustee, and the beneficial or equitable interest to the beneficiaries. It has been said many times that the radical idea of a trust is the coexistence of the legal title and the equitable interest, and that perfect ownership is decomposed into its constituent elements of legal title and beneficial interest, which are vested in different persons at the same time.
Judge Zimmerman, in the opinion in Trust Co. v. White, supra, said:
“One who constructs a valid present trust, providing for a life estate in himself with a further trust in favor of other beneficiaries on his death, grants to such beneficiaries an immediate equitable title in remainder, and the arrangement is not of a testamentary nature. On the other hand, a will is quite different, in that it has no effect until the testator’s death and vests no interests in the beneficiaries until the happening of that event.”
And paragraph one of the syllabus of that case reads as follows:
“1. A valid trust inter vivos is created when, under a trust agreement, the settlor transfers and delivers property to a trustee with the intention of passing title, and designated beneficiaries take immediate vested interests in such property,”
Although the trustor’s power to revoke in the White case was conditioned upon his securing the approval of the trustee, we see no substantial reason why the same rule should not apply where the power to revoke is in the trustor alone. Any rule *519 other than that the interest of the beneficiary vests upon the creation of the trust would result in a confusion of the law of trusts beyond that which resulted from Worthington v. Redkey and would, we fear, require a much longer period of recovery.
It has been suggested that, since Adelaide M. Iredell was not living at the time of the death of the trustor, there was no one in being who could take under the trust, and that, therefore, the property remaining in the hands of the trustee must go back to the heirs of the trustor.
Section 2131.04, Eevised Code, provides:
‘ ‘ Eemainders, whether vested or contingent, executory interests, and other expectant estates are descendable, devisable and alienable in the same manner as estates in possession.”
This section is a codification of the common-law rule which is set out, as follows, in 33 American Jurisprudence, 614, Section 149:
“A vested remainder is an actual estate and, by the rules of the common law, is susceptible of a sale and transfer of title. Title will pass by sale or conveyance, devise, or inheritance. This rule applies to a vested remainder subject to be divested, and title in such case passes subject to the condition subsequent. ’ ’
This court has specifically held in Millison v. Drake, 123 Ohio St., 249, 174 N. E., 776, that a vested remainder subject to he divested is alienable.
Another quotation from Simes and Smith, supra, Section 1885, will serve to illustrate the application of the rule.
“He who inherits a future interest takes it subject to all limitations and conditions which were imposed upon the interest in the hands of the ancestor. Thus suppose Blaekacre has been devised to A for life, remainder to B in fee, but, if 0 should have a son, then to the first son of C in fee. B has a defeasibly vested remainder. If he dies intestate while C is yet alive, but before the birth of a son, B’s heir, H, will take the remainder subject to the same condition as was imposed upon it in the hands of B. Thus, if C then has a son, H will lose his interest. On the other hand, if C should die without ever having a son, then H’s remainder would become indefeasible.”
Applying the illustration to the facts of this case, we hold *520 that Adelaide M. Iredell took a vested interest subject to defeasance by the exercise of the power of revocation. By her will, that interest was bequeathed to Virginia Tenney, who then took the remainder subject to the same condition as was imposed upon it in the hands of Adelaide M. Iredell. If Mary E. Monfort had exercised her power of revocation, Virginia Tenney would have lost her interest. Inasmuch as the power was not exercised, Virginia Tenney’s interest became indefeasible upon the death of Mary E. Monfort.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Taet, JJ., concur.